**FRANKLIN MARTINEZ, Appellant/Plaintiff**

**v.**

**COLOMBIAN EMERALDS, INC., Appellee/Defendant**

S. Ct. Civ. Nos. 2007-06; 2007-11

Supreme Court of the Virgin Islands

March 4, 2009

175

Joseph B. Arellano, Esq., Arellano & Associates, St. Thomas, USVI, *Attorney for Appellant.*

A. JEFFREY WEISS, ESQ., A.J. Weiss & Associates, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice, dissenting.*

## OPINION OF THE COURT

(March 4, 2009)

HODGE, C.J. Appellant Franklin Martinez ("Martinez") challenges the Superior Court's order dismissing his complaint and ordering him to arbitration, and denying both his subsequent motion for reconsideration of the dismissal and his companion motion for stay of the proceedings pending arbitration. Martinez also challenges the award of attorney's fees to Appellee Colombian Emeralds, Inc. ("CEI"). For the reasons stated below, the dismissal of the complaint and award of attorneys' fees will be reversed.

## I. BACKGROUND

Martinez, a citizen of Colombia and Switzerland, filed suit against CEI, a Virgin Islands corporation, alleging that he possessed an interest in certain real property located in St. Thomas, U.S. Virgin Islands, titled in CEI's name. He sought an injunction to prevent CEI from selling the property or listing it for sale. Following service of process, the parties stipulated that CEI's answer or other responsive pleading was due on August 1, 2003. On August 5, 2003, CEI, not having pled to the complaint by the stipulated deadline, motioned the court for an extension to August 21, 2003 to plead. Martinez, on August 12, 2003, objected to the request and in its prayer for relief asked the trial court to enter CEI's default. The Superior Court denied the extension without prejudice stating that CEI had failed to make the required showing of excusable neglect for its failure to timely plead.

On September 2, 2003, CEI, without seeking further leave of the court, filed a motion to dismiss the action. CEI argued that an October 10, 1992 agreement between the parties concerning the property in question ("1992 agreement") contained an arbitration clause requiring the parties

179

to arbitrate the dispute.[1] Prior to Martinez responding to CEI's motion to dismiss, the parties entered into a series of court-approved stipulations which stayed the action until April 30, 2004 to permit the parties to pursue settlement discussions. The parties were unable to reach a settlement, however, and on November 18, 2004, the Superior Court entered a prompting order requiring Martinez to advise it of the status of the case within thirty days or the matter would be dismissed. In response to the prompting order, Martinez filed a motion for entry of default against CEI, alleging that it had failed to answer, respond or otherwise plead to the complaint. CEI in turn filed motions to have its motion to dismiss deemed conceded and renewed the motion to dismiss. In response, Martinez moved to strike CEI's motion to dismiss and again moved for entry of CEI's default.

The trial court granted CEI's motion to dismiss on January 2, 2007 and denied as moot Martinez's motion to enter CEI's default. Martinez thereafter moved for reconsideration of the dismissal and, for the first time, sought a stay pending arbitration on January 18, 2007. Both motions were denied by the court on January 24, 2007.

Following dismissal, the Superior Court granted CEI's request for attorney's fees on January 30, 2007, one day after it was filed and before Martinez's court-ordered response date of February 14, 2007. This timely appeal of the trial court's dismissal and reconsideration orders, as well as its attorneys' fees award, followed.[2]

## II. JURISDICTION

Prior to considering the merits of an appeal, this Court must first determine whether it has jurisdiction over the matter. *V.I. Gov't Hosp. and Health Facilities Corp. v. Gov't of the V.I.*, 50 V.I. 276, 279 (V.I. 2008). This Court, recognizing that its jurisdiction to hear this matter might be

---

[1] The agreement was between Martinez, Seahorse Foundation — a Turks and Caicos corporation — and Young Caribbean Jewelry Company Limited ("Young Caribbean"), a Cayman Islands corporation. CEI is a wholly-owned subsidiary of Young Caribbean. Though it is not a signatory to the agreement, CEI admits that the agreement is binding on it. *See E.I. DuPont de Nemours & Co. v. Rhone Poulec Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 195 (3d Cir. 2001) (holding that an arbitration agreement is binding on a non-signatory affiliate corporation).

[2] The appeal of the January 2, 2007 dismissal was timely filed on January 31, 2007, within the thirty days required by Supreme Court Rule 5(a)(1).

affected by the United Nations Convention on the Recognition and Enforcement of Foreign Arbital Awards, informally known as the New York Convention (hereafter "the Convention"), codified as 9 U.S.C. § 201 *et seq.*, issued an October 3, 2008 order directing the parties to submit supplemental briefs on this issue. In their supplemental briefs, both parties agreed that the Convention is applicable to this dispute because it is governed by an arbitral agreement "arising out of a legal relationship . . . which is considered commercial" that is not entirely between United States citizens. 9 U.S.C. § 202. Accordingly, we must consider how the Convention may affect the subject matter jurisdiction of this Court and the Superior Court.

1. Virgin Islands Local Courts Have Jurisdiction Over Agreements Governed by the Convention.

▇ Congress, seeking to facilitate the enforcement of international arbitration agreements in the federal courts, granted federal district courts original jurisdiction over arbitration agreements that fall under the Convention. The statute reads, in pertinent part:

> An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

9 U.S.C. § 203. "Original jurisdiction" is defined as "[a] court's power to hear and decide a matter before any other court can review the matter." BLACK'S LAW DICTIONARY 869 (8th ed. 2004).

▇ However, granting a court "original jurisdiction" does not in itself preclude other courts from hearing the matter, for multiple courts may have original and *concurrent* jurisdiction.[3] "Concurrent jurisdiction" is

---

[3] The dissent states, at the outset, that the Revised Organic Act, the Virgin Islands Code, the Convention, the Restatement (Third) of Foreign Relations Law, and the United States Code do not grant this Court or the Superior Court jurisdiction to hear matters involving international arbitration agreements. However, had the United States not enacted the Convention, and the facts of this dispute otherwise remained the same, there is no question that the Superior Court — and consequently, this Court — would have subject matter jurisdiction pursuant to title 4, section 76(a) of the Virgin Islands Code, which grants the Superior Court "original jurisdiction in all civil actions regardless of the amount in controversy," and section 22 of the Revised Organic Act, which authorizes the Legislature to vest the Superior Court with jurisdiction over all civil proceedings except those with respect to income tax laws.

defined as "[j]urisdiction that might be exercised simultaneously by more than one court over the same subject matter and within the same territory, a litigant having the right to choose the court in which to file the action." *Id.* at 868. For a court of original jurisdiction to have the exclusive right to hear a case, it must also possess "exclusive jurisdiction," which is defined as "[a] court's power to adjudicate an action or class of actions to the exclusion of all other courts." *Id.*

■ Any inquiry as to whether a state or territorial court has jurisdiction over matters Congress has authorized federal courts to consider must begin with a rebuttable presumption that the courts share concurrent jurisdiction, for it is well established that, "[t]o give federal courts exclusive jurisdiction over a federal cause of action, Congress must, in an exercise of its powers under the Supremacy Clause, affirmatively divest state courts of their presumptively concurrent jurisdiction." *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823, 110 S. Ct. 1566, 108 L. Ed. 2d 834 (1990). This affirmative divestment of a local court's jurisdiction can come in the form of "an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 478, 101 S. Ct. 2870, 69 L. Ed. 2d 784 (1981). Merely granting a federal court original jurisdiction to hear a matter is not sufficient for a finding of divestment, for "[i]t is black letter law . . . that the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action." *Id.* at 479.

■ Because 9 U.S.C. § 203 grants "district courts of the United States . . . original jurisdiction," a presumption exists that federal district courts share concurrent original jurisdiction over agreements covered by

Because both the Revised Organic Act and the Virgin Islands Code expressly confer Virgin Islands local courts with subject matter jurisdiction over this dispute — a civil action involving real property located in the Virgin Islands — the question here is not whether any of these authorities *grants* subject matter jurisdiction over cases involving international arbitration agreements to the Superior Court, but whether the Convention's enabling legislation *revokes* subject matter jurisdiction the Superior Court already has pursuant to the ROA and local law. As discussed further in this section, Congress, in enacting this enabling legislation, clearly sought to expand the jurisdiction of federal courts without limiting the jurisdiction of local courts. *Cf.* RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 487 cmt. h (1987) (noting that only state courts may hear matters involving foreign judgments that are not governed by the Convention, unless another basis for federal jurisdiction exists).

the Convention with state and territorial courts, including the Superior Court of the Virgin Islands. Though this presumption is rebuttable, none of the requirements for rebuttal are met. Notably, the statute not only fails to explicitly divest state courts of jurisdiction, but affirms that state courts have jurisdiction over these matters. The statute's removal provision reads, in pertinent part:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants *may, at any time before the trial thereof*, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending.

9 U.S.C. § 205 (emphasis added). Since the plain text of the statute allows a defendant to, at his discretion, choose to litigate the matter in either state or federal court, the clear implication is that the state court has jurisdiction to actually conduct a trial and render a judgment.[4] *See LaFarge Coppee v. Venezolana De Cementos, S.A.CA.*, 31 F.3d 70 (2d Cir. 1994) (denying removal to federal court under 9 U.S.C. § 205 because action, though involving an agreement falling under the Convention, had already proceeded to trial in New York state court). In other words, the Convention's enabling legislation essentially allows a defendant to consent to adjudication in state court through its inaction. *See Caringal v. Karteria Shipping, Ltd.*, 108 F. Supp. 2d 651, 656 (E.D. La. 2000) (remanding matter involving agreement falling under the Convention to state court because only a defendant can remove such a matter under 9 U.S.C. § 205 and defendant had not done so in this case); *see also Employers Ins. of Wausau v. Certain Underwriters at Lloyd's, London*, 787 F. Supp. 165 (W.D. Wis. 1992), *mandamus den., In re*

---

[4] Although Virgin Islands local courts are technically not "state" courts, it is well established that Congress has chosen to give the Virgin Islands territorial government "autonomy similar to that of the states." *Harris v. Boreham*, 3 V.I. 565, 233 F.2d 110, 113-14 (3d Cir. 1956). Though Congress has the right to "revise, alter and revoke" this autonomy, this "does not diminish the powers while they reside in the territory." *Id.* at 113. Thus, references to "state courts" in federal legislation have been construed to include Virgin Islands local courts in the absence of language that would explicitly exclude the territorial courts. *See Gov't v. United Indus. Workers of N. Am.*, 38 V.I. 170, 987 F. Supp. 439, 444 (D.V.I. App. Div. 1997), *aff'd* 40 V.I. 489, 169 F.3d 172 (3d Cir. 1999) (applying the Federal Arbitration Act to the Virgin Islands judicial system).

*Amoco Petroleum Additives Company*, 964 F.2d 706, 711-13 (7th Cir. 1992) (remanding to state court action arising under a Convention agreement because all defendants must consent to removal to federal court pursuant to 9 U.S.C. § 205). Likewise, nothing in the statute's legislative history remotely indicates that Congress intended to strip state courts of their jurisdiction in such matters. *See* H.R. REP. NO. 91-1181 (1970).

▮ We must, however, still consider whether there is "a clear incompatibility between state-court jurisdiction and federal interests." *Gulf Offshore Co.*, 453 U.S. at 478. For a state court to enforce an international arbitration agreement under the Convention, it must possess the ability to further the policies underlying the Convention. At least one federal circuit court has observed that 9 U.S.C. § 201 *et seq.* in and of itself does not require state courts to grant a stay of proceedings under the Convention. *See McDermott Int'l Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1211 n.16 (5th Cir. 1991). Thus, if a state court does not have the procedural mechanisms in place to facilitate the policies underlying the Convention, it may not have jurisdiction over the dispute because of the clear incompatibility between state court jurisdiction and the federal interest of having an international arbitration agreement enforced in accordance with the Convention. *See id.* at 1211.

▮ The U.S. Virgin Islands, unlike most other jurisdictions, does not have an independent statute explicitly allowing local courts to force the parties to enter binding arbitration pursuant to the terms of their agreement, let alone an independent international arbitration statute mandating compliance with the Convention. However, this does not mean that Virgin Islands local courts do not have the power to compel arbitration and are not bound to enforce agreements pursuant to the terms of the Convention. Under section 4, title 1 of the Virgin Islands Code, "the restatements of the law approved by the American Law Institute . . . shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." The Restatement (Third) of Foreign Relations Law reads, in pertinent part:

> Under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards . . . a court in a state party to the Convention *must*, at the request of any party to an action, stay or dismiss the action pending arbitration if an agreement to arbitrate falling under the Convention is in effect and covers the controversy on which the action is based.

184

RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES, § 487(2) (1987) (emphasis added).

 The Restatement — which, due to the absence of a local law to the contrary, provides the rule of decision in a case involving international arbitration — clearly requires a Virgin Islands local court to apply the Convention and stay or dismiss the action upon the request of a party.[5] *See Gov't v. United Indus. Workers*, 40 V.I. 489, 169 F.3d 172,

---

[5] The dissent argues that our opinion in *Browne v. People*, 50 V.I. 241 (V.I. 2008) emphasized that title 1, section 4 is triggered only in cases involving the common law, and thus precludes our application of the Restatement (Third) of Foreign Relations Law to this case. We disagree. Although this Court emphasized the phrase "rules of the common law" in *Browne*, the phrase "common law," has not been construed as narrowly as advocated in the dissent. For instance, in *Browne* itself, this Court, in order to determine which party bore the burden of proving that the "proof is evident or the presumption is great" under section 3 of the Revised Organic Act, invoked section 4 to adopt the rule applied by the "vast majority of jurisdictions with *constitutional provisions* similar to section 3 of the ROA." *Id.* at 259 (emphasis added). Likewise, in *Tobal v. People*, S. Ct. Crim. No. 2008-080, 2009 V.I. Supreme LEXIS 11, *7 (V.I. Feb. 11, 2009), this Court, citing to *Browne*, interpreted the phrase "bailable by sufficient sureties" in the Revised Organic Act by applying the constitutional interpretation adopted by a majority of other jurisdictions.

The dissent is correct that not all Restatement provisions restate the common law, but may restate statutory law or even promote new rules preferred by the drafters. *See, e.g., Frank J. Vandall, A Critique of the Restatement (Third), Apportionment as it Affects Joint and Several Liability*, 49 EMORY L.J. 565, 619 (2000) (criticizing the Restatement (Third) of Torts for adopting "four tort reform alternatives" unsupported by actual law); WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS 39 n.12 (4th ed. 1971) (noting that a requirement found in the Restatement (Second) of Torts that a person may recover for assault even in the absence of a gesture is not supported by any case law). Nevertheless, it is well established that a Restatement rule shall constitute the "common law" of the Virgin Islands even if it is not itself based on the common law. Most significantly, the Third Circuit has expressly held that section 4 requires Virgin Islands local courts to apply Restatement provisions even if they are based on federal statutory law rather than the common law, such as section 345(f) of the Restatement (Second) of Contracts. *See Gov't v. United Indus. Workers*, 40 V.I. 489, 169 F.3d 172, 177-78 (3d Cir. 1999) ("The common law, as articulated by the Restatement, provides that arbitration law depends on statutory schemes, and thus the [Superior] Court should apply the FAA scheme to questions of arbitration."). *See also Abdallah v. Callender*, 28 V.I. 416, 428, 1 F.3d 141, 147 (3d Cir. 1993) (holding that common law only applies in the absence of local law or a Restatement rule); *Co-Build Companies, Inc., v. Virgin Islands Refinery Corp.*, 15 V.I. 528, 533, 570 F.2d 492, 494 (3d Cir. 1978) ("When no precedents relate specifically to the adjudication of a Virgin Islands dispute, the courts are directed to turn to the various Restatements of Law, approved by the American Law Institute, which are to provide the rules of decision for such cases 'in the absence of local laws to the contrary.' "); *Skeoch v. Ottley*, 6 V.I. 241, 252, 377 F.2d 804, 810 (3d Cir. 1967) ("We have in mind also that Virgin Islands law, absent contrary local law or statute, incorporates the principles enunciated in the 'restatements of law approved by the American Law Institute.' ");

177 (3d Cir. 1999) (holding that RESTATEMENT (SECOND) OF CONTRACTS § 345(f) requires Virgin Islands local courts to apply the Federal Arbitration Act.) As a result, there is no fear that a Virgin Islands court, if it had jurisdiction over a dispute relating to an agreement covered by the Convention, would undermine Congress's clear intent and refuse to grant a stay or dismissal pursuant to the Convention. Accordingly, there is no "clear incompatibility" between federal interests and Virgin Islands local courts having jurisdiction over such matters.[6] Thus, the Superior

---

Courts in the Virgin Islands have also consistently applied Restatement provisions based on the Third Circuit's broad reading of section 4, even when the rule articulated in that Restatement is not grounded in the common law or covers matters that are not traditionally resolved through the common law. Notably, the District Court of the Virgin Islands has applied the rules articulated in the Restatement (Third) of Foreign Relations Law pursuant to section 4 in the absence of contrary Virgin Islands legislation. *See Guardian Ins. Co. v. Bain Hogg Int'l Ltd.*, 52 F. Supp. 2d 536, 540 (D.V.I. 1999). Likewise, several Virgin Islands courts — including this Court — have applied the Restatement (Third) of the Law Governing Lawyers (2000) even though rules governing the legal profession are typically set by court rule or statute. *See, e.g., V.I. Bar v. Brusch*, 49 V.I. 409, 412 (V.I. 2008) (applying Restatement (Third) of the Law Governing Lawyers § 5 pursuant to section 4); *Nunez v. Lovell*, 50 V.I. 707, 718 (D.V.I. 2008) (applying conflict of interests rules articulated in RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 121 pursuant to section 4); *Mendez v. Hovensa, LLC*, 49 V.I. 849, 863 (D.V.I. 2008) (holding that, because the Restatements *provide* the common law of the Virgin Islands, RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 100, which defines a represented non-client, is applicable). Accordingly, the RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 487(2), even if based on a federal statute, clearly provides the rule of decision in this case. *See United Indus. Workers*, 169 F.3d at 177.

[6] The dissent, citing title 1, section 2 of the Virgin Islands Code, which limits application of the Code to the territory of the Virgin Islands, argues that a clear incompatibility exists because the Superior Court cannot compel the parties to arbitrate this dispute in the Cayman Islands. Although Congress's enabling legislation states that "[a] court *having jurisdiction under this chapter* may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States," 9 U.S.C. § 206 (emphasis added), this provision is not intended to displace jurisdiction from courts that lacked the ability to compel arbitration, but, by its own terms, is intended to grant federal district courts — the courts which received concurrent original jurisdiction to hear these actions pursuant to 9 U.S.C. § 203 — an *additional* power to compel international arbitration. *See McDermott In'l*, 944 F.2d at 1211 n.16 (holding that 9 U.S.C. § 206 "arguably confers no authority on state courts to compel arbitration" because "the only courts 'having jurisdiction under [the Convention Act]' are federal.").

Because the issue of whether the Superior Court has the power to compel arbitration in a foreign country is not properly before this Court, it is inappropriate for us to address this issue at this time. *See St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 328 n.8 (V.I. 2007). Nevertheless, even if the Superior Court lacks this power, an inability to compel ar-

186

Court had jurisdiction over the original litigation, and this Court has appellate jurisdiction pursuant to title 4, section 32(a) of the Virgin Islands Code.

## III. DISCUSSION

Our review of a dismissal under Federal Rule of Civil Procedure 12(b)(6) is *de novo. Ballentine v. United States*, 486 F.3d 806, 808, 48 V.I. 1059 (3d Cir. 2007). We also review *de novo* the trial court's jurisdictional determinations. *Id.* A denial of a motion for entry of default is reviewed for abuse of discretion. *Stephenson v. El-Batrawi*, 524 F.3d 907, 915 (8th Cir. 2008). In this case, the initial issue before this Court is whether the motion to dismiss filed by CEI was properly before the trial court. If it was, then we must decide whether the trial court erred in granting the motion while denying Martinez's request for entry of default as moot.

In the trial court, Martinez sought entry of default against CEI arguing that the motion to dismiss filed as a responsive pleading in lieu of an answer, was untimely and, therefore, was not properly before the court. CEI sought dismissal based on the parties' prior agreement to arbitrate disputes. The trial court, upon finding that the dispute was clearly subject to arbitration pursuant to the parties' agreement, concluded that the Federal Arbitration Act ("FAA") and decisions interpreting the FAA essentially divested it of subject matter jurisdiction over the dispute. As a result, the trial court did not reach the issues of the timeliness of the motion or CEI's position or standing before the court to assert it, presumably because the court treated the issues as affecting subject matter jurisdiction which can be raised and addressed by the court at anytime. *See CSX Transp. Co. v. Novolog Bucks County*, 502 F.3d 247, 254 (3d Cir. 2007).

CEI's motion to dismiss did not state any rule or authority to support the dismissal. It merely requested that the court enter "an order of dismissal as a result of plaintiff's failure to submit the dispute to

---

bitration outside of the Virgin Islands would not frustrate the policy underlying the Convention so long as the Superior Court is required to stay or dismiss a proceeding involving an agreement that arises under the Convention. To the extent a defendant wishes to compel international arbitration — rather than merely staying or dismissing the proceedings — and finds that the Superior Court is unable to grant such relief, it may simply remove the proceedings to a federal district court pursuant to the Convention's removal provisions. *See* 9 U.S.C. § 205.

 

arbitration." (J.A. at 19.) The motion further argued that under "[t]he October 10, 1992 Agreement of the parties and pursuant to the [FAA], the Court is divested of subject matter jurisdiction." (J.A. at 20.) It is thus clear that CEI was moving the trial court to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Federal Rule of Civil Procedure 12(b) provides, in pertinent part:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, *except* that the following defenses may at the option of the pleader be made by motion: (1) *lack of jurisdiction over the subject matter,* . . . (6) *failure to state a claim upon which relief can be granted* . . . A motion making any of these defenses shall be made before pleading *if a further pleading is permitted.*

FED. R. CIV. P. 12(b) (emphasis added).

 However, the presence of an arbitration agreement does not deprive the trial court of subject matter jurisdiction. Since the trial court may stay the proceeding pending arbitration, it does not lose jurisdiction of the subject matter. *See Harris v. Green Tree Fin. Corp.,* 183 F.3d 173, 176 (3d Cir. 1999). In fact, motions seeking the dismissal of an action on the basis that arbitration is required are not jurisdictional as they raise a defense to the merits of an action. *See Llyod v. Hovensa, LLC,* 369 F.3d 263, 272 (3d Cir. 2004); *John Ashe Assocs., Inc. v. Envirogenics Co.,* 425 F. Supp. 238, 241 n.3 (E.D. Pa. 1977) (stating that arbitration agreements limit the scope of a court's review, not its subject matter jurisdiction (collecting cases)). Such motions are not covered by Rule 12(b)(1), dealing with subject matter jurisdiction, but are instead considered under Federal Rules of Civil procedure 12(b)(6) or 56.[7] *Nationwide Ins. Co. of Columbus, Ohio v. Patterson,* 953 F.2d 44, 45 n.1 (3d Cir. 1991). The Third Circuit Court of Appeals explained the difference as follows:

> Although the court did not specify under which subsection of Rule 12 the action was being dismissed, the magistrate discussed the issue in

---

[7] The motion to dismiss in this case was not converted to a Rule 56 motion for summary judgment as permitted by Federal Rule of Civil Procedure 12(c) because no notice or opportunity was provided to the parties to present pertinent Rule 56 materials.

terms of subject matter jurisdiction. This procedural error is significant because of the differing standards for evaluating the evidence under Rule 12(b)(1) and Rule 12(b)(6). Under Rule 12(b)(1), the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen v. First Federal Savings and Loan Assn.*, 549 F.2d 884, 891 (3rd Cir. 1977). In contrast, because a Rule 12(b)(6) motion "results in a determination on the merits at an early stage of plaintiff's case, the plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn." *Id.*; *see also* [*Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986).]

*Boyle v. Governor's Veterans Outreach & Assistance Ctr.*, 925 F.2d 71, 74 (3d Cir. 1991).

██ We will, therefore, consider whether the trial court's dismissal was proper under Rule 12(b)(6). A motion to stay pending arbitration is not included in the ambit of Federal Rule of Civil Procedure 12(b) as a motion that suffices as a responsive pleading in lieu of an answer. However, courts traditionally have "entertained pre-answer motions that are not specifically provided for in the Federal Rules of Civil Procedure, including motions to stay pending arbitration." *See Intec USA, LLC v. Engle*, No. 1:05CV468, 2006 U.S. Dist. LEXIS 24100, *1 n.1, [WL] (M.D.N.C. Mar. 23, 2006) (citing *Smith v. Pay-Fone Sys., Inc*, 627 F. Supp. 121, 122 (N.D. Ga. 1985)); 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1347 (3d ed. 2007) (stating that Rule 12(b) promotes the expeditious and simultaneous presentation of defenses and objections). Thus, CEI's motion to dismiss in favor of arbitration will be treated as a pre-answer motion under Rule 12(b)(6). *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 598 (3d Cir. 2004); *Nationwide Ins. Co.*, 953 F.2d at 45 n.1.

██ A pre-answer Rule 12(b)(6) motion to dismiss is allowed only if it is made before pleading, "if a further pleading is permitted." FED. R. CIV. P. 12(b). Martinez contends that as a result of CEI's failure to timely plead, coupled with the denial of CEI's request for an extension of time to plead, no further pleading by CEI was permitted, and, therefore, CEI's motion to dismiss was not properly before the trial court. We agree.

██ ██ According to the specified time limitation on Rule 12(b) motions, they must be made "before pleading;" and Rule 12(a), which

allows twenty days for filing responsive pleadings, normally controls the time limit on Rule 12(b) motions. *See*, 5C WRIGHT et al., *supra*, § 1361. In this case, CEI was required by the parties' court approved stipulation to plead to the complaint by August 1, 2003, but CEI did not do so. Instead, after expiration of the filing deadline, CEI moved the court for an extension of time to plead. In its motion for an extension, however, CEI did not show that its failure to timely plead was the result of excusable neglect as required by Superior Court Rule 10(a).[8] *See Farrington v. Benjamin*, 20 V.I. 470, 473, 100 F.R.D. 474 (D.V.I. 1984). The trial court was within its discretion to deny the motion for extension without prejudice due to the absence of the required showing of excusable neglect. *See id.* (courts have discretion to permit an act to be done after expiration of the original prescribed period only upon motion of the party desiring to act timely and only upon a showing that the failure to act was the result of excusable neglect). At that posture of the case, absent the granting of a proper motion by CEI to plead out of time filed with the requisite showing of excusable neglect, no further pleading was permitted by CEI, and, consequently, the filing of a pre-answer motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) was not permitted.[9] *See Granger v. Kemm, Inc.*, 250 F. Supp. 644, 645 (E.D. Pa. 1966) (objection to venue denied when filed thirty-five days after date to answer expired and no answer filed). The motion to dismiss in favor of arbitration was filed on September 2, 2003, nearly three weeks after Martinez opposed CEI's motion to extend the time to plead to the complaint and first asked the trial court to enter CEI's default. Furthermore, section 3 of the Federal Arbitration Act — applicable to Virgin Islands local courts pursuant to

---

[8] "When an act is required or allowed to be done at or within a specified time —

(a) The court for cause shown may at any time in its discretion:

1. With or without notice, order the period enlarged if application therefor is made before the expiration of the period originally prescribed or as extended by a previous order of the court.

2. On motion, permit the act to be done after the expiration of the specified period if the failure to act was the result of excusable neglect."

SUPER. CT. R. 10(a).

[9] In fact, a motion for relief under Rule 55(c) is required when a defendant has failed to answer within the required time period even when a formal entry of default has not been made by the court. *See* 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2692 (3d ed. 2007) (citing *Gray v. John Jovino Co., Inc.*, 84 F.R.D. 46, 47 (E.D. Tenn. 1979)).

RESTATEMENT (SECOND) OF CONTRACTS § 345(f), as recognized by the Third Circuit's decision in *United Indus. Workers, N.A.*, 169 F.3d at 177 — expressly states that a trial court may not act on a party's motion to stay the proceedings pending arbitration or to refer the matter to arbitration when that party is in default.[10] 9 U.S.C. § 3; *see also Satcom Int'l Group PLC v. Orbcomm In'l Partners, L.P.*, 49 F. Supp. 2d 331 (S.D.N.Y. 1999) (holding that FAA applies to actions involving the Convention).

■ The motion to dismiss was therefore not properly before the trial court and should not have been considered. *Id.* The trial court should have considered Martinez's motion to strike the motion to dismiss and its motion for entry of CEI's default before considering CEI's Rule 12(b) motion.[11]

■ Since the trial court did not address the timeliness or propriety of the pre-answer Rule 12(b)(6) motion to dismiss, and summarily denied Martinez's request for entry of default as moot when it erroneously treated the dismissal motion as depriving it of subject matter jurisdiction, we will reverse the dismissal and permit the trial court to address those matters fully in the first instance.[12] We reach this conclusion fully aware that there is a strong federal policy favoring arbitration, *see Lloyd*, 369 F.

---

[10] Notably, 9 U.S.C. § 3 also applies to Convention proceedings in federal court. *See* 9 U.S.C. § 208 (stating that provisions of the Federal Arbitration Act are incorporated into the Convention unless expressly contradicted).

[11] Our decision is not intended to prevent trial courts from exercising discretion to consider untimely motions to dismiss in all cases. While courts within the Third Circuit have moved away from the rule in *Granger* prohibiting consideration of late-filed motions to dismiss, *see, e.g.*, *Breland v. ATC Vancom, Inc.*, 212 F.R.D. 475, 477 (E.D. Pa. 2002), the restrictive interpretation in *Granger* is still binding where the Rule 12(b)(6) motion is made after the expiration of the time to plead and after the plaintiff has moved for an entry of default. *See Breland*, 212 F.R.D. at 477 (compiling cases). A restrictive interpretation of the time limits is justified when, as in this case, a defendant agrees to a stipulated due date for pleading but ignores that date and, after the plaintiff moves for entry of default, the defendant files an untimely motion for extension of time to plead without showing excusable neglect.

[12] Where the court exercises its discretion to accept late motions it must specify the factors considered so that a reviewing court may evaluate the decision for an abuse of discretion. *Cf. Landon v. Jean-Paul Budinger, Inc.*, 724 S.W.2d 931, 940 (Tex. App. 1987) ("The better practice would have been for the trial court to state in the record its reasoning so that the parties particularly, but also the appellate court, might intelligently assess whether the trial court erred . . . ."). In this case, the court did not review the motion to strike or the request for entry of default or give any reason for considering the motion to dismiss other than the conclusion that it lacked subject matter jurisdiction.

3d at 270, and that this result will further delay final resolution of this long-running dispute which the parties may have agreed to resolve by arbitration. However, it is equally important that parties abide by the rules of procedure in presenting their claims to the courts and not circumvent those rules or valid court orders, as was done by CEI in this case. *See generally*, *Wirtz v. Hooper-Holmes Bureau, Inc.*, 327 F.2d 939, 943 (5th Cir. 1964).

 Our resolution of the dismissal issue makes it unnecessary to consider the remaining issues raised, except that the award of attorney's fees cannot stand because, by our disposition, CEI is no longer the prevailing party entitled to attorney's fees. *See* 5 V.I.C. § 541(b). The attorney's fee award will, therefore, be vacated.

## IV. CONCLUSION

This Court will reverse and remand the order of dismissal in favor of arbitration, so that the trial court may consider the posture of the motion under the correct standard and address Martinez's motion for entry of default. Our decision herein makes it unnecessary to consider the trial court's denial of reconsideration.[13] Finally, we vacate the award of attorney's fees as CEI is no longer the prevailing party entitled to recover attorney's fees.

## DISSENTING OPINION

SWAN, J., *dissenting*.

## SUMMARY

We lack jurisdiction in this case. The Revised Organic Act ("ROA") does not grant us jurisdiction. The Virgin Islands Code does not grant us jurisdiction. The text and provisions of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") do not grant us jurisdiction. The Restatement (Third) of Foreign Relations Law of the United States does not grant us jurisdiction. No part of the United States Code grants us jurisdiction. Specifically, Chapter 2 of Title 9 of the United States Code does not grant us jurisdiction. The

---

[13] Since our resolution of this case does not require us to address Martinez's motion for reconsideration, we need not consider whether Martinez's motion for reconsideration was timely filed within the ten-day time limitation of Local Rule of Civil Procedure 7.4.

presumption of concurrent jurisdiction with the District Court does not grant us jurisdiction. The presumption against extraterritorial application of our territorial statutes militates against our having jurisdiction. Therefore, I dissent and would dismiss this appeal, would vacate the Superior Court's judgment, and would instruct that court to dismiss the complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure.

This case involves a dispute concerning an international commercial agreement with an arbitration clause that was consummated among parties of different nationalities. Chapter 2 of Title 9 of the United States Code pertaining to international arbitration controls the parties' dispute. In Chapter 2, the Congress of the United States vested jurisdiction to adjudicate the parties' dispute in congressionally created courts within United States territories, pursuant to section 460, Title 28, of the United States Code. Accordingly, I would also vacate the Superior Court's attorney's fee award and instruct the trial court to simultaneously dismiss the request for attorney's fees.

## I. INTRODUCTION

This case involves an international commercial agreement with an arbitration clause that was consummated among parties of different nationalities. The parties chose the laws of the Cayman Islands, a territory of the United Kingdom, for any dispute resolution. The United States of America has enacted a special statute to address disputes arising under the parties' agreement. In the statute, the Congress of the United States entrusted jurisdiction to courts created by the United States Congress. I failed to uncover any territorial law explicitly granting Virgin Islands territorial courts jurisdiction over an arbitration clause in an international commercial agreement. Therefore, I conclude that this Court must vacate the orders of the Superior Court and instruct that court to dismiss Plaintiff's complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Similarly, because a court without jurisdiction cannot award attorney's fees, this appeal must be dismissed and the case remanded to the Superior Court for that court to dismiss Appellee's motion for attorney's fees. *See Skaff v. Meridien North America Beverly Hills, LLC*, 506 F.3d 832, 837 (9th Cir. 2007) ("A court that lacks jurisdiction at the outset of a case lacks the authority to award attorneys' fees.").

In the residuum of this opinion, I will explain these conclusions in greater detail. First, I state the facts and history necessary for an understanding of this dispute. Second, I examined the pertinent arbitration statute and compared its provisions with the parties' agreement. Third, I examined the jurisdictional statutes of Title 9 of the United States Code and the jurisdictional statutes of the Superior Court. Fourth, I enumerated several reasons which explicate my position that while we are absolutely in favor of our national policy compelling arbitration, a Chapter 2 action under the federal arbitration law must be commenced and be prosecuted in a federal forum. For this case, the federal forum is the District Court of the Virgin Islands, a court established by the United States Congress.

## II. FACTS AND PROCEDURAL HISTORY

Franklin Martinez ("Martinez" or "Appellant") initiated an action against Columbian Emeralds, Inc. ("Columbian Emeralds" or "Appellee"), alleging a breach of the parties' contract (J.A. at 1 & 2.) Martinez is a dual citizen of Switzerland and Columbia. (*Id.*) Colombian Emeralds, a Virgin Islands corporation, owns a condominium unit ("Unit L 40") in the Virgin Islands. (*Id.*) Colombian Emeralds is a wholly owned subsidiary of Young Caribbean Jewellery Company Limited ("YCJ"), a Cayman Islands corporation. (*Id.* at 2; *id.* at 29.) Martinez and another entity, Seahorse Foundation, a Turks and Caicos corporation, own YCJ. (*Id.* at 24.) The parties[1] executed an October 10, 1992 shareholders agreement and stock purchase agreement. (*Id.* at 24.) The agreement contains a choice of law provision in which the parties agreed that any dispute among them would be settled *according to the laws of the Cayman Islands* and that the parties would arbitrate *any dispute* in the Cayman Islands. (J.A. at 28.) The agreement provides for Stephen Crane ("Crane") and YCJ to make certain payments to Martinez, including transferring Colombian Emeralds' condominium unit to Martinez upon completion of agreed conditions. (J.A. at 29.)

---

[1] The agreement was among Franklin Martinez; Seahorse Foundation, a Turks and Caicos Company; Young Caribbean Jewellery Company Limited, a Cayman Islands Corporation; and Stephen Crane ("Crane") in his individual capacity.

It is indisputable that the parties' agreement is the basis of this action. (J.A. at 2; J.A. at 19.)[2] Paragraph 12 of the parties' agreement addresses the procedure for resolution of any dispute:

> 12. In the event any dispute arises under the terms of this agreement, it will be *resolved by arbitration in the Cayman Islands, West Indies, and the law of the Cayman Islands shall prevail.* Crane shall be considered to be one party for purpose of arbitration and Martinez the other party. Each party shall appoint one arbitrator and notify the other of such appointment within 10 days after written request from the other.

(J.A. at 28) (emphasis added.)

Specifically, the cornerstone of this case is a dispute emanating from paragraph eighteen of the parties' agreement. The paragraph provides:

> 18. Upon the payment to Martinez of all of the sums due and owing under the terms of this agreement and the fulfillment of all obligations by Crane and YCJ, Crane and YCJ shall cause an apartment described as parcel no. 40 Leeward Way, Cowpet Bay, St. Thomas, U.S. Virgin Islands, presently owned by Colombia Emeralds, Inc., a subsidiary of YCJ, to be transferred, conveyed and set over to Martinez, free and clear of all encumbrances.

(J.A. at 29.)

In his complaint, Martinez alleged that he received information from an undisclosed source that Columbian Emeralds was about to sell Unit L 40. (J.A. at 2.) Unit L 40 is the same property that the parties contracted to have transferred over to Martinez pursuant to Paragraph 18 of the

---

[2] Appellant's complaint, for example, made clear at the onset that *"pursuant to an agreement* entered into in 1992 between the plaintiff and the principals, shareholders and/or controlling interests of the Defendant, the defendant herein, Colombian Emeralds, Inc., is obligated to transfer and to convey title to Unit L 40 to the Plaintiff free and clear of all encumbrances." (*Id.* at 2 (emphasis added.)) Furthermore, the gravamen of Appellant's claim to an interest in the unit is Appellee's alleged *breach of the parties' agreement.* Appellant, the complaint proclaims, "has a right to have title to Unit L 40 conveyed and transferred to him by the [Appellee] upon the payment of certain *sums of money due him under his agreement* with . . . . [Appellee]." (*Id.*) However, Appellant's complaint continues, "[s]aid sums of money should have been fully paid to the Plaintiff by December 31, 1999, but they have not been paid to date." (J.A. at 2.)

contract. Therefore, Martinez sought an injunction from the Superior Court, enjoining the listing and/or sale of Unit L 40 to a third person. (*Id.*) Martinez also sought attorney's fees, court cost, and such other and further relief that the trial court deemed just.[3]

The Superior Court's January 2, 2007 order granted Colombian Emeralds' motion to dismiss this case. The order not only directed that Martinez's complaint be dismissed, but also denied Colombian Emeralds' motion to deem its motion to dismiss conceded, and granted Colombian Emeralds' request for attorney's fees. (J.A. 105-06.) Subsequently, Martinez filed a motion for the Superior Court to reconsider its January 2, 2007 order, together with an application for a stay. (J.A. at 109.) On January 24, 2007, the Superior Court dismissed both Martinez's motion and his application for a stay. (J.A. at 126.) This appeal ensued. After oral argument, the Court ordered further briefing from the parties. Both parties agreed that the Convention applied to this dispute but stated that the Superior Court had jurisdiction to entertain this action.

## III. THIS COURT'S JURISDICTION

Section 32(a), Title 4 of the Virgin Islands Code[4], Act No. 6687 of the Virgin Islands legislature, and approved October 29, 2004, grants this Court its jurisdiction. Act No. 6687 provides in pertinent part "(a) the Supreme Court shall have jurisdiction over all appeals arising *from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law*." The mandate in section 32(a) is buttressed by the language in section 33(a) of Title 4, which states "(a) Appealable judgments and orders to the Supreme Court shall be available only upon the entry of a final judgment in the Superior Court from which appeal or application for review is taken." The Superior Court has "original jurisdiction over all civil actions," pursuant to section 76(a), Title 4, of the Virgin Islands Code.

Therefore, our jurisdiction over this case is precipitated by the Superior Court entering a valid *final judgment. See United States v. Cotton*, 535 U.S. 625, 630, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002) ("[S]ubject-

---

[3] Martinez also filed a notice of pending action affecting title to Apartment 40 Leeward Way, Cowpet Bay, St. Thomas with the office of the Recorder of Deeds.

[4] V.I. CODE ANN. tit. 4, § 32(a).

matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived."); *see also Am. Nat'l Red Cross v. S.G.*, 505 U.S. 247, 255, 112 S. Ct. 2465, 120 L. Ed. 2d 201 (1992); *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990) ("[C]ourt has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it.") (internal quotations and parentheses omitted). *See generally* 4 AM. JUR. 2d *Appellate Review* § 75 (Westlaw 2008) ("When a lower court does not have jurisdiction over the case before it, an appellate court also lacks jurisdiction to review the merits of the claim.").

The federal statute that undisputedly governs jurisdiction for the parties' dispute is Title 9, section 203 of the United States Code which provides:

> An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (*including the courts enumerated in section 460 of Title 28*) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy. (emphasis added).

It is compellingly noteworthy that section 203 includes the phrases; "arise under the laws and treaties of the United States," "the district courts of the United States," and "shall have original jurisdiction over such an action or proceeding." Section 460, Title 28 of the United States Code enumerates "each court created by Act of Congress in a territory which is invested with any jurisdiction of a district court of the United States, and to the judges thereof . . . ." Section 460 neither enumerates nor includes the Superior Court in its application. Rather, section 460 explicitly articulates "courts created by Acts of Congress" and "jurisdiction of a district court of the United States or federal courts." Importantly, it is instructive that section 203 includes mandatory language such as "shall be deemed to arise under the laws and treaties of the United States" and "shall have original jursidction."

## IV. THE ISSUE

The pivotal issue is whether the Superior Court of the Virgin Islands has jurisdiction to enforce a contract with an international arbitration

clause in the Cayman Islands, a territory of the United Kingdom, pursuant to the Convention, notwithstanding that Title 9, section 203 of the United States Code limits original jurisdiction to congressionally created courts in United States territories and notwithstanding Title 1, section 2, of the Virgin Islands Code, which limits the application of Virgin Islands territorial courts' jurisdictional statutes to "throughout the territory of the Virgin Islands."

## V. STANDARDS OF REVIEW

An appellate court must satisfy itself that the courts hierarchically below it have jurisdiction to enter a final order. *FW-PBS, Inc., DBA Paris Adult Bookstore, II v. City of Dallas*, 493 U.S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990). ("[C]ourt has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it.") (internal quotations and parentheses omitted). Even if the parties do not raise the issue of jurisdiction, an appellate court "has both the inherent authority and a continuing obligation to assess whether it has jurisdiction over a case or controversy before rendering a decision on the merits." *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 211, 48 V.I. 1034 (3d Cir. 2007).

If satisfied of our jurisdiction to review the parties' case, we will proceed to review *de novo* the Superior Court's interpretation of the Convention. *See Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.*, 489 F.3d 580, 584 (3d Cir. 2007); *Admart AG v. Stephen and Mary Birch Found., Inc.*, 457 F.3d 302, 307 (3d Cir. 2006). After assessing jurisdiction over this case, I conclude that the Superior Court lacks subject matter jurisdiction to address the merits of the parties' dispute. *See, e.g., United States v. Cotton*, 535 U.S. 625, 630, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002) ("[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived."). Commencing with the next section, and in greater detail, I discuss the inevitability of my opinion that both the Superior Court of the Virgin Islands and the Supreme Court of the Virgin Islands (collectively "territorial courts") lack jurisdiction over this case.

**VI. BACKGROUND**

The Virgin Islands, a territory of the United States, favors our national policy towards arbitration.[5] Concomitantly, we acknowledge the compelling policy in favor of arbitration when international arbitration agreements are involved. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 631, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985) (the presumption carries "special force" in international commerce); *China Minmetals Materials Imp. and Exp. Co., Ltd. v. Chi Mei Corp.*, 334 F.3d 274, 281-282 (3d Cir. 2003) (noting the special force of the presumption for arbitration); *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 194 (3d Cir. 2001) ("presumption in favor of arbitration carries 'special force' when international commerce is involved, because the United States is also a signatory to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards.") (quoting 473 U.S. at 631). "[T]he national policy favoring arbitration . . . places arbitration agreements on equal

---

[5] *See, e.g., Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, ___, 128 S. Ct. 1396, 1402, 170 L. Ed. 2d 254 (2008) (noting national policy favoring arbitration); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 1207, 163 L. Ed. 2d 1038 (2006) ("the national policy favoring arbitration"); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) ("the liberal federal policy favoring arbitration agreements"); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491, (2002) (quoting *id.*); *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S. Ct. 754, 151 L. Ed. 2d 755, (2002) ("federal policy favoring arbitration."); *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 81, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000) ("liberal federal policy favoring arbitration agreements"); *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 76, 119 S. Ct. 391, 142 L. Ed. 2d 361 (1998) ("federal policy favoring arbitration"); *First Options of Chicago, Inc. v. Kaplan* 514 U.S. 938, 948, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) ("federal policy favoring arbitration"); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995) ("the FAA not only declared a national policy favoring arbitration but actually withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.") (internal quotation omitted); *J. Alexander Securities, Inc. v. Mendez*, 511 U.S. 1150, 114 S. Ct. 2182, 128 L. Ed. 2d 901 (1994) ("strong federal policy favoring arbitration"); *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 478, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989) ("[i]n recognition of Congress' principal purpose of ensuring that private arbitration agreements are enforced according to their terms, we have held that the FAA pre-empts state laws."). *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984) ("[i]n enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration.").

footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006).

Courts routinely dismiss cases when they lack jurisdiction, because an order entered by a court without jurisdiction is a nullity. FED. R. CIV. P. 12(h)(3); *See, e.g., Office of Senator Mark Dayton v. Hanson*, 550 U.S. 511, 512, 127 S. Ct. 2018, 2019, 167 L. Ed. 2d 898 (2007) ("Because we do not have jurisdiction . . . we dismiss the appeal."). Therefore, a court's dismissal of a case because it lacks jurisdiction is hardly hostility towards arbitration. Indeed, an order by a court without jurisdiction is no less void as one hostile to arbitration. *See, e.g., Buffalo Forge Co. v. United Steelworkers of Am., AFL-CIO.*, 428 U.S. 397, 410, 96 S. Ct. 3141, 49 L. Ed. 2d 1022 (1976) (trial court's injunction favorable to arbitration vacated because court lacked jurisdiction to issue injunctive relief).

In the following subsections, I expound why Chapter 2 of Title 9 controls this dispute. Thereafter, I explain how this law applied to Martinez when he filed his complaint and why a court with jurisdiction must refer the case for arbitration without imposing further directives. After reviewing the plain language of the applicable statutes and their legislative history, I conclude that the Superior Court lacks jurisdiction to order arbitration in the Cayman Islands, involving a dispute emanating from an international agreement. Next, I begin with the structure of America's arbitration legislation and the interrelationships between its sections. However, it is crucial that the differences between Chapter 1 and Chapter 2 of Title 9 of the United States Code be punctiliously observed.

## A. Title 9 of the United States Code and its Three Interrelated Arbitration Chapters

Title 9 of the United States Code codifies the entire body of federal law on arbitration. 9 U.S.C. § 1 *et seq.* There are three separate, interrelated chapters of title 9. *Id.* Chapter 1 contains the original arbitration statute enacted by Congress in 1925 and incorporates sections 1 through 16 of Title 9 ("Chapter 1").[6] Chapter 2, enacted in 1970, consists of sections 201 to 208 of Title 9 ("Chapter 2"), and implements the provisions of the United Nations Convention on the Recognition and Enforcement of

---

[6] *See* Act of February 12, 1925, Ch. 213, §§ 1 *et seq.* In 1954, the Act was renamed the Federal Arbitration Act and was codified in Title 9 of the United States Code.

Foreign Arbitral Awards.[7] Chapter 3, enacted in 1990 implements the Inter-American Convention on Commercial Arbitration of 1975, and consists of sections 301 to 307 of Title 9 ("Chapter 3").[8] Rather than amend Chapter 1 of Title 9, and risk unsettling the well entrenched jurisprudence of Chapter 1, Congress enacted Chapter 2 as a separate chapter. *See McDermott Intern., Inc. v. Lloyds Underwriters of London,* 944 F.2d 1199, 1208 (5th Cir. 1991). Congress replicated this legislative

---

[7] The United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, also known as the New York Convention, was adopted at the conclusion of the United Nations Conference on International Commercial Arbitration held between May 20 to June 10, 1958, at the United Nations Headquarters in New York, New York. *See* http://www.uncitral.org/uncitral/en/uncitraltexts/arbitration/NYConvention_travaux.html. The United States of America implemented the convention by enacting Chapter 2 of title 9 of the United States Code on July 31, 1970, Pub. L. 91-368, 84 Stat. 692. There are currently at least 142 signatories to the convention including the United Kingdom and its territory, the Cayman Islands. *See generally* http://www.uncitral.org/pdf/07-87406_Ebook_ALL.pdf. The following countries have acceded to the convention: Albania, Algeria, Antigua and Barbuda, Argentina, Armenia, Australia, Austria, Azerbaijan, Bahamas, Bahrain, Bangladesh, Barbados, Belarus, Belgium, Benin, Bolivia, Bosnia and Herzegovina, Botswana, Brazil, Brunei Darussalam, Bulgaria, Burkina Faso, Cambodia, Cameroon, Canada, Central African Republic, Chile, China Colombia, Costa Rica, Cote d'Ivoire, Croatia, Cuba, Cyprus, Czech Republic, Denmark, Djibouti, Dominica, Dominican Republic, Ecuador, Egypt, El Salvador, Estonia, Finland, France, Gabon, Georgia, Germany, Ghana Greece, Guatemala, Guinea, Haiti, Holy See, Honduras, Hungary, Iceland, India, Indonesia, Islamic Republic of Iran, Ireland, Israel, Italy, Jamaica, Japan, Jordan, Kazakhstan, Kenya, Kuwait, Kyrgyzstan, Lao People's Democratic Republic, Latvia, Lebanon, Lesotho, Liberia, Lithuania, Luxembourg, Madagascar, Malaysia, Mali, Malta, Marshall Islands, Mauritania, Mauritius, Mexico, Moldova, Monaco, Mongolia, Montenegro, Morocco, Mozambique, Nepal, Netherlands, New Zealand, Nicaragua, Niger, Nigeria, Norway, Oman, Pakistan, Panama Paraguay, Peru, Philippines, Poland, Portugal, Qatar, Republic of Korea, Romania, Russian Federation, Saint Vincent and the Grenadines, San Marino, Saudi Arabia, Senegal, Serbia, Singapore, Slovakia, Slovenia, South Africa, Spain, Sri Lanka, Sweden, Switzerland, Syrian Arab Republic, Thailand, The former Yugoslav Republic of Macedonia, Trinidad and Tobago, Tunisia, Turkey, Uganda, Ukraine, United Arab Emirates, United Kingdom of Great Britain and Northern Ireland, United Republic of Tanzania, United States of America, Uruguay, Uzbekistan, Bolivarian Republic of Venezuela, Vietnam, Zambia, and Zimbabwe. *Available at* http://www.uncitral.org/uncitral/en/uncitral_texts/arbitration/NYConvention_status.html.

[8] The Inter-American Convention on International Commercial Arbitration, *opened for signature* Jan. 30, 1975, O.A.S.T.S. No. 42, 1438 U.N.T.S. 245, is also known as the "Panama Convention" because it was adopted in Panama City, Panama. The United States implemented the convention by enacting Chapter 3 of Title 9 of the United States Code on August 15, 1990, Pub. L. 101-369, § 1, 104 Stat. 448.

approach in Chapter 2 when it subsequently enacted Chapter 3 of Title 9 in 1990.

Chapter 2 is a confluence of diplomatic efforts and domestic legislation. The President of the United States negotiated the terms of Chapter 2 pursuant to his treaty power.[9] The United States Senate gave its traditional advice and consent to the treaty on October 4, 1968.[10] Subsequently, Congress buttressed the President's efforts by adopting and enacting Chapter 2 of the Federal Arbitration Act ("FAA").[11] The law that resulted, Chapter 2, is an integral part of the highest law of the land.[12] *See Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co. (Pemex)*, 767 F.2d 1140, 1145 (5th Cir. 1985) ("Congress then adopted enabling legislation to make the Convention the highest law of the land."). Therefore, the provisions of Chapter 2, according to its terms, supersede all prior inconsistent rules of law on the same subject. *Id.*

I am cognizant that there is confusion regarding the use of the FAA and the Convention. Sometimes courts have indicated that the Convention or Chapter 2 is a part of the FAA or Chapter 1, and use various names to refer to Chapter 2.[13] Actually, the three individual but interrelated

---

[9] "[The President] shall have Power, by and with the Advice and Consent of the Senate, to make Treaties, Provided two thirds of the Senators present concur. . . ." *Id.* Art. I, § 8, cl. 18.

[10] "[The President] shall have Power, by and with the Advice and Consent of the Senate, to make Treaties, provided two thirds of the Senators present concur. . . ." *Id.* art. II, § 2, cl. 2.

[11] "The Congress shall have Power . . . [t]o make all laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." U.S. CONST. art. I, § 8, cl. 18.

[12] Article 6, Clause 2, of the United States Constitution states:

This Constitution, and all the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the Supreme Law of the Land; and the Judges in every State Shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

CONST. art. VI cl. 2.

[13] *See, e.g., China Minmetals Materials Import and Export Co., Ltd. v. Chi Mei Corp.*, 334 F.3d 274, 280 (3d Cir. 2003) (denominating *"domestic FAA (chapter 1 of the FAA)"* and *"the Convention (chapter 2 of the FAA)"*); *Id* at 282 ("it is of course, true that the FAA, of which the Convention is part, establishes a strong federal policy in favor or arbitration . . . ."); *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 448-449 (3d Cir. 2003) ("An

chapters of Title 9 constitute the corpus of federal arbitration law. *See generally* 9 U.S.C. chapts. 1, 2, & 3.

The three chapters are interrelated in significant ways pertinent to this case. For example, Chapters 2 and 3 incorporate the provisions of Chapter 1 provided the provisions of Chapter 1 do not conflict with the Conventions. *See* 9 U.S.C. §§ 208, 307. Pivotal to an inquiry into our jurisdiction is that in both Chapters 2 and 3, a court's power to compel arbitration is enunciated in identical language. *See* 9 U.S.C. §§ 206, 303 ("A court having jurisdiction under this chapter may direct the arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States."). When a dispute is actionable under both Chapter 2 and 3, the former controls, unless a majority of the signatories to the arbitration agreement are members of the Organization of American States (OAS)[14] who have acceded to the Inter-American Convention[15], in which case the latter controls.[16]

Colombia, Martinez's country, is a member of the "OAS" which has acceded to the Inter-American Convention. *See*http://www.state.gov/

---

arbitration provision in an international commercial agreement is governed by the *United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards* ('*CREFAA*')"); *Sandvik AB v. Advent Intern. Corp.*, 220 F.3d 99, 102 (3d Cir. 2000) ("This matter arises under Chapter Two of the FAA, which implements the CREFAA.") *See also Rhone Mediterranee Compagnia Francese Di Assicurazioni E Riassicurazoni v. Lauro*, 712 F.2d 50, 52 (3d Cir. 1983) ("The Federal Arbitration Act . . . implements the United States' accession on September 1, 1970 to the Convention. . .").

[14] The members are: Antigua and Barbuda, Argentina, The Bahamas, Barbados, Belize, Bolivia, Brazil, Canada, Chile, Colombia, Costa Rica, Cuba, Dominica, Dominican Republic, Ecuador, El Salvador, Grenada, Guatemala, Guyana, Haiti, Honduras, Jamaica, Mexico, Nicaragua, Panama, Paraguay, Peru, Saint Kitts and Nevis, Saint Lucia, Saint Vincent and the Grenadines, Suriname, Trinidad and Tobago, United States of America, Uruguay, Venezuela. *Available at* http://www.oas.org/documents/eng/memberstates

[15] The OAS members who have acceded to the Panama Convention are: Argentina, Bolivia, Brazil, Chile, Colombia, Costa Rica, Dominican Republic, Ecuador, El Salvador, Guatemala, Honduras, Mexico, Nicaragua, Panama, Paraguay, Peru, United States of America, Uruguay, and Venezuela. *Available at* http://www.sice.oas.org/dispute.

[16] § 305. Relationship between the Inter-American Convention and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958

When the requirements for application of both the Inter-American Convention and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, are met, determination as to which Convention applies shall, unless otherwise expressly agreed, be made as follows:

p/wha/rls/fs/2008/103315.htm (listing members of the Organization); http://www.sice.oas.org/dispute/comarb/iacac/iacac2e.asp (listing countries that have acceded to the Inter-American Convention). Since Martinez is the sole signatory to the parties' agreement who is a citizen of an OAS and an Inter-American Convention country, Chapter 2 of the FAA controls this dispute. There are four signatories to the parties' agreement. However, because Martinez is a dual citizen of Columbia and Switzerland, there are *five countries whose citizens signed the agreement.* Therefore, irrespective of Crane's nationality, the applicable Chapter for resolving this dispute would not be impacted. To illustrate, if Crane is a citizen of the United States, he would be the second signatory from a country that is a member of the OAS that has acceded to the Inter-American Convention. Should Crane be a dual citizen of the United States of America and of another member country of the OAS that has acceded to the Inter-American Convention, there would be three signatories from such countries and three signatories from non-OAS states which is not a majority. Four signatories from OAS countries that have acceded to the Inter-American Convention are needed for Chapter 3 of Title 9 to apply. Therefore, Chapter 2 is applicable to this dispute.

Title 9 U.S.C. § 208 provides that "Chapter 1 applies to actions and proceedings brought under this chapter to the extent that chapter is not in conflict with this chapter or the Convention as ratified by the United States." Consequently, if the Superior Court has no jurisdiction under Chapter 2's jurisdictional provisions, then Chapter 1 cannot be invoked to grant the Superior Court jurisdiction in this case.

## B. Chapter 2 of the Federal Arbitration Act is the Applicable Law in this Dispute

Any qualifying international arbitration agreement among persons of different nationalities *"shall be enforced in United States courts in*

---

(1) If a majority of the parties to the arbitration agreement are citizens of a State or States that have ratified or acceded to the Inter-American Convention and are member States of the Organization of American States, the Inter-American Convention shall apply.
(2) In all other cases the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall apply.
9 USCA § 307.

*accordance with*" Chapter 2 of the FAA. *See* 9 U.S.C. § 201.[17] Section 201's pronouncement that "the 'Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter,' . . . demonstrates that Congress knows how to accord domestic effect to international obligations when it desires such a result." *Medellin v. Texas*, 552 U.S. 491, 128 S. Ct. 1346, 1366, 170 L. Ed. 2d 190 (2008). Section 202 of the Convention, which governs the type of "agreement or award falling under the convention," provides:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title [*i.e.* title 9], falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

9 U.S.C. § 202.

Section 2 of Chapter 1, provides:

> § 2. Validity, irrevocability, and enforcement of agreements to arbitrate A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an *agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable*, save upon such grounds as exist at law or in equity for the revocation of any contract. (Emphasis supplied).

---

[17] The Convention on the Recognition and Enforcement of Foreign Arbitral Award of June 10, 1958, shall be enforced in United States Courts in accordance with this chapter. 9 U.S.C. 201.

Section 202 of Chapter 2, which incorporates section 2 of Chapter 1, provides a mechanism for enforcing our policy of arbitration when the agreement is international. In deciding that an international contract is governed by Chapter 2, a court must determine that four elements exist in the agreement. *Admart AG v. Stephen and Mary Birch Found., Inc.*, 457 F.3d 302, 307 (3d Cir. 2006). First, there must be a written agreement between the parties to arbitrate the dispute. Second, the jurisdiction chosen by the parties for the arbitration of their dispute must be a country that is a signatory to the New York Convention. Third, the dispute must arise from commercial legal relationship whether contractual or not. Fourth, at least one party to the arbitration agreement is not an American citizen. 9 U.S.C. § 202. If the agreement is within the scope of Chapter 2 of the FAA, the court must compel arbitration, unless the agreement is not otherwise valid. 9 U.S.C. § 206. I will apply these four elements to the parties' shareholders agreement and stock purchase agreement.

## 1. The Parties' Written Agreement Covers the Subject of the Dispute

Paragraph 12 of the parties' written shareholders agreement and stock purchase agreement provides for arbitration in the Cayman Islands. Undeniably, the parties' dispute is one expressly originating from Paragraph 18 of the same agreement. Therefore, the parties' written agreement addresses their dispute. Accordingly, their agreement qualifies as a foreign arbitration agreement within the context and provisions of section 202, Title 9 of the United States Code.

## 2. New York Convention is Applicable to the Cayman Islands

Paragraph 12 of the parties' agreement provides for arbitration in the Cayman Islands, a territory of the United Kingdom, which is a signatory to the New York Convention. The applicability of the New York Convention took effect in the Cayman Islands on November 26, 1980,[18] twelve years before the parties' October 10, 1992 shareholders agreement and stock purchase agreement. Therefore, Chapter 2 of Title 9 applies to the parties' agreement.

---

[18] On November 26, 1980, the United Kingdom extended the territorial application in the case of awards made only in the territory of another contracting state to Cayman Islands. *See* Convention on the Recognition and Enforcement of Foreign Arbitral Awards, available at http://www.uncitral.org/pdf/07-87406_Ebook_ALL.pdf.

### 3. The Parties' Dispute Arose out of a Commercial Legal Relationship

The subject of the agreement is a commercial legal relationship, because it involves the purchase and sale of stock in a corporation that transacts "business through subsidiary corporations throughout the Caribbean area." (J.A. at 24.) The agreement required the payment of certain monies and real estate in order to complete the transaction. (*Id.* at 2.) The dispute arose because Martinez complains that not only has Columbian Emeralds failed to make the necessary payments, but it has listed Unit L 40 for sale, which is the same property to be used for satisfying Columbian Emeralds' payment obligations to him *under Paragraph 18 of the parties' agreement. (Id. at 2.)*

Specifically, to create a legal relationship, a corporation must enter agreements through its agents. *See, e.g., Braswell v. United States*, 487 U.S. 99, 108 S. Ct. 2284, 101 L. Ed. 2d 98 (1988) ("Artificial entities such as corporations may act only through their agents. . . ."). Demonstrating that the parties contemplated a legal relationship, Crane signed the agreement twice: with one signature, he binds himself *personally* to the agreement; and with the other, *as an agent*, binding YCJ, an artificial entitity. (J.A. at 24.) Martinez signed personally and Robert B. Cordes signed on behalf of Seahorse Foundation, another artificial entity. Therefore, it is unmistakable that there exists a legal, contractual relationship among the parties. However, to be meaningful for purposes of Chapter 2, the parties' relationship must also be "commercial."

"[A] legal relationship [that is] commercial includ[es] a transaction, contract, or agreement described in section 2 of [Title 9]." § 202. "Commerce" means "[t]he exchange of goods and services." BLACKS LAW DICTIONARY 285 (2004). Therefore, the parties' shareholder agreement and stock purchase agreement which involves the exchange of stock by Martinez and Crane or Columbia Emeralds was a commercial activity. Essentially, the sale of stock by Martinez, upon the payment of monies and other consideration, and the purchase of the stock by Crane or Columbia Emeralds, is a commercial legal relationship. *See, e.g., CanWest Global Commc'n Corp. v. Mirkaei Tikshoret Ltd.*, 9 Misc.3d 845, 861, 804 N.Y.S.2d 549, 563 (N.Y.Sup. 2005) ("There is no question that the underlying transaction for the purchase of and subsequent transfer of shares . . . is commercial."); *Marchetto v. DeKalb Genetics Corp.*, 711

F. Supp. 936, 939 (N.D.Ill. 1989) (dispute over a shareholder and stock purchase agreement arises out of a commercial legal relationship). *Cf. Siderius, Inc. v. Compania de Acero del Pacifico, S.A.*, 453 F. Supp. 22, 24 (D.C.N.Y. 1978) (purchase and sale of goods is a "classical commercial relationship"). I next address the nationalities of the parties to the arbitration agreement, which is necessary for determining whether the Convention applies.

### 4. No More Than One United States Citizen is Signatory to the Arbitration Agreement

For Chapter 2 to apply, at least one signatory to the parties' agreement must *not* be a United States citizen. In the parties' agreement, it appears that no signatory to the agreement is a United States citizen. Martinez is both a citizen of Switzerland and Colombia Seahorse Foundation is a Turks and Caicos corporation and citizen. Young Caribbean Jewelry Company Limited is a Cayman Islands corporation and citizen. Crane's nationality is not stated, but it is irrelevant in our analysis. *See supra* IV (A). Although not a signatory to the arbitration agreement, Columbian Emeralds correctly admits that the agreement is binding upon it. *See, e.g., E.I. DuPont de Nemours & Co.*, 269 F.3d at 195 (arbitration agreements are binding on non-signatory affiliate corporations.). It is critical that nationality, rather than the locus or location of the property involved in the parties' agreement, is the relevant consideration for determining a court's jurisdiction under Chapter 2. *See* § 202. Therefore, the location of Unit L 40 in this jurisdiction is irrelevant in our assessment of the Superior Court's jurisdiction over this case.

All the elements necessary for the compulsory operation of Chapter 2 are present in this case. Therefore, the parties' October 10, 1992 shareholders agreement and stock purchase agreement contains a valid and enforceable arbitration agreement, which *must* be enforced in the Cayman Islands, according to Chapter 2, *by a court with jurisdiction*. I find nothing in the agreement that would remotely suggest that the agreement is null, void, inoperable or incapable of being performed and enforced under Article II (3) of the New York Convention. Nevertheless, the Superior Court of the Virgin Islands cannot compel arbitration, because it lacks jurisdiction to order arbitration in the Cayman Islands, a territory of the United Kingdom. To be succinct, an order by the Superior Court to enforce arbitration in the Cayman Islands pursuant to the parties'

shareholders agreement and stock purchase agreement is an extraterritorial exercise of the powers of the Superior Court.

## VII. A COURT WITH JURISDICTION PURSUANT to SECTION 206 of THE CHAPTER 2 and ARTICLE II (3) of THE CONVENTION MUST ENFORCE ARBITRATION BY DISMISSING or ORDERING a STAY

I find that when the Convention is applicable to an international arbitration contract, a court with jurisdiction must refer the case for arbitration according to the parties' agreement.

Article II, section 3, of the Convention provides that:

> *The court* of a Contracting State, *when seized of an action* in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed. (Emphasis added).[19]

The critical operative section of the Convention that is applicable to federal law through Chapter 2 is section 206. This section provides that: "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. Such court may also appoint arbitrators in accordance with the provisions of the agreement." 9 U.S.C. § 206.

Although section 206's "may direct" language could lead to the belief that the court with jurisdiction has discretion to refer the parties to arbitration, there is no discretion. *See, e.g., McCreary Tire & Rubber Co. v. CEAT S.p.A.*, 501 F.2d 1032, 1037 (3d Cir. 1974) ("There is nothing discretionary about article II (3) of the Convention. It states that [trial] courts shall at the request of a party to an arbitration agreement refer the

---

[19] It is noteworthy that neither the Convention nor Chapter 2 empowers *any* court of a contracting state to act. Congress's "a court having jurisdiction" accurately reflect "the court . . . seized of an action" within the meaning of the Convention. To "seize" also means "to take possession of by legal authority. . . ." Dictionary.com. *Available at* http://dictionary.reference.com/browse/seized. A court takes by "legal authority" only if it has jurisdiction to do so.

parties to arbitration."). *Cooper v. Ateliers de la Motobecane, S.A.,* 57
N.Y.2d 408, 414, 442 N.E.2d 1239, 1242, 456 N.Y.S.2d 728, 731 (N.Y.
1982) ("[T]he Third Circuit ruled that the language 'refer the parties to
arbitration' precludes the courts from acting in any capacity except to
order arbitration, and therefore an order of attachment could not be
issued. To hold otherwise would defeat the purpose of the UN
Convention."). *Ledee v. Ceramiche Ragno,* 684 F.2d 184, 187 (1st Cir.
1982) ("Our conclusion accords with the general mode by which
appellate courts have construed the Convention and Chapter 2 of the
Federal Arbitration Act.") (citing *Parsons & Whittemore Overseas Co.,
Inc. v. Societe Generale de l'Industrie du Papier (RAKTA),* 508 F.2d 969,
973-74 (2d Cir. 1974) and *McCreary,* 501 F.2d 1032. *Cf. Certain
Underwriters at Lloyd's London v. Argonaut Ins. Co.* 500 F.3d 571,
581-582 (7th Cir. 2007) ("when the parties do not otherwise determine by
contract, deadlines included in arbitration agreements under the
Convention will admit of no exceptions."); *E.A.S.T., Inc. of Stamford,
Conn. v. M/V Alaia,* 876 F.2d 1168, 1173 (5th Cir.) (1989) ("The plaintiff
in *McCreary* had sought actively to avoid arbitration, initiating state court
proceedings by attaching the defendant's property."); *Sedco, Inc. v.
Petroleos Mexicanos Mexican Nat. Oil Co. (Pemex),* 767 F.2d 1140, 1151
(5th Cir. 1985) ("9 U.S.C. § 206 does not confer discretion in compelling
arbitration.").

I agree with the District Court of the Virgin Islands and the affirming
United States Court of Appeals for the Third Circuit that in adjudicating
a case under the Convention, a court with jurisdiction retains jurisdiction
after referral. I agree in particular that:

> Our interpretation . . . is that if a controversy must be referred to ar-
> bitration under the Convention no other judicial action should be taken
> in the interim. Arbitration does not merely stay the trial; it stays all
> proceedings-e.g. pre-trial conferences, discovery, etc. Further, any
> pre-trial judicial action that was taken prior to arbitration, which is in
> conflict with the terms of the arbitration, must be rescinded. *McCreary*
> does not state, however, that a controversy referred to arbitration must
> be removed from a court's docket. A Third Circuit case which was
> decided after *McCreary* supports our conclusion. In [*Becker
> Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH,* 585 F.2d 39,
> 47 (3d Cir. 1978)], the Third Circuit held that arbitration was mandated

by the Convention and then went on to say that "the case will be remanded with the direction that the district court *stay* the proceedings before it pending arbitration." (Emphasis added).

*Rhone Mediterranee Compagnia Francese Di Assicurazioni E Riassicurazioni v. Lauro*, 555 F. Supp. 481, 486 (D.V.I. 1982), *aff'd*, 712 F.2d 50 (3d Cir. 1983).

Within the *courts with jurisdiction*, two points of views have emerged regarding the proper *method* of referring a matter for arbitration. *I do not confuse this with whether a court has jurisdiction in the first place.* The reason for this schism is that neither Chapter 2 nor the Convention expressly provides a method for a court with jurisdiction to retain its jurisdiction after *referring the matter to arbitration according to the parties' agreement.* The "dismissal camp" concludes that when a court has jurisdiction it should dismiss the convention case once it has referred the matter for arbitration. *See, e.g., Siderius, Inc. v. Compania de Acero del Pacifico*, 453 F. Supp. 22 (S.D.N.Y. 1978); *Ledee v. Ceramiche Ragno*, 528 F. Supp. 243, 245-46 (D.P.R. 1981), *aff'd*, 684 F.2d 184 (1st Cir. 1982). The "stay camp", "however, disagree[s] that referral to arbitration mandates an outright dismissal of arbitrable issues." *Tennessee Imports, Inc. v. Filippi*, 745 F. Supp. 1314, 1323 (M.D.Tenn., 1990) (citing *Rhone Mediterranee*, 712 F.2d 50) (collecting cases). The "stay" courts explain that Chapter 2 extends to Chapter 1 in "actions and proceedings brought under this chapter to the extent that that chapter is not in conflict with this chapter or the Convention." 9 U.S.C. § 208. Therefore, the provision for a stay in section 3 of Chapter 1 may be utilized in resolving a dispute under Chapter 2, which means that the referring court retains jurisdiction. *See, e.g., DiMercurio v. Sphere Drake Ins., PLC*, 202 F.3d 71, 77 (1st Cir. 2000) (noting "the modern view that arbitration agreements do not divest courts of jurisdiction, though they prevent courts from resolving the merits of arbitrable disputes.").

The Restatement (Third) of the Foreign Relations Law of the United States accommodates both camps. Section 487(2) of the Restatement provides that: "a court in a state party to the Convention must, at the request of any party *stay or dismiss* the action pending arbitration if an agreement to arbitrate falling under the Convention is in effect and covers

the controversy on which the action is based." (Emphasis added).[20] The purpose of section 487 is not to undermine the centrality of referral or to grant jurisdiction. We do not have the ability to "dismiss" or to "stay" because we cannot enforce arbitration in the Cayman Islands, an Island outside the Virgin Islands, because we lack authorization from the Legislature of the Virgin Islands ("Legislature") to do so.

## VIII. DISCUSSION

### A. WE LACK JURISDICTION BECAUSE THE REVISED ORGANIC ACT DOES NOT GRANT EXTRATERRITORIAL JURISDICTION to THE SUPERIOR COURT

Revised Organic Act of 1954 § 2(a), 48 U.S.C. §§ 1541-1645 (1994) reprinted in V.I. Code Ann. Historical Documents, Organic Acts and U.S. Constitution at 159-60 (1995) (Preceding V.I. Code Ann. Title 1) states clearly that:

> (a) The Provisions of this Act, and the name "Virgin Islands" as used in this Act, shall apply to and include the territorial domain, islands, cays, and waters acquired by the United States through cession of the Danish West Indian Islands by the convention between the United States of America and His Majesty the King of Denmark entered on August 4, 1916, and ratified by the Senate on September 7, 1916 (39 Stat. 1706) . . . .

In providing for local courts, section 21(a) of the ROA states:

> § 21 [District Court of the Virgin Islands and local law courts; jurisdiction of local law courts; rules]
> (a) The judicial power of the Virgin Islands shall be vested in a court of record designated the 'District Court of the Virgin Islands' *established by Congress*, and in such appellate court and lower local courts as may have been or may hereafter be established by local law.

---

[20] *See also Filippi*, 745 F. Supp. at 1324:

Although the [c]ourt agrees with the *McCreary* court that referral to arbitration is mandatory under the Convention and the Act, the [c]ourt does not see that the language of the Convention and the Act clearly mandates referral to arbitration exclusively in the form of either a dismissal or a stay of arbitrable issues. Nor does the [c]ourt find any language which suggests that the Convention and the Act cannot accommodate both methods of referral.

A "local court" is "a court whose jurisdiction is limited to a particular territory, such as a state, municipal, or county court." BLACKS LAW DICTIONARY 382 (8th ed. 2004). A "local law" is a "statute that relates to or operates in a particular locality rather than the entire state." *id.* at 957. The multiple use of the word "local" in this provision is significant. The use demonstrates that Congress did not contemplate foreign affairs for our territorial courts. Additionally, Congress restricted the power of the Legislature of the Virgin Islands to enact legislation in matters involving treaties. Specifically, section 8(a), of the ROA, provides that ". . . no law shall be enacted which would impair rights existing or arising by virtue of any treaty or international agreement entered into by the United States, . . . ."[21] Chapter 2 involves a treaty and international agreement entered into by the United States and enforced through Chapter 2 of Title 9 of the United States Code. Moreover, Chapter 2 embraces the specter of the Supremacy Clause of the United States Constitution.

Article 21(b) of the ROA also provides that:

> (b) The legislature of the Virgin Islands may vest in the courts of the Virgin Islands *established by local law* jurisdiction over all causes in the Virgin Islands over which any court established by the Constitution and laws of the United States does not have exclusive jurisdiction. Such jurisdiction shall be subject to the concurrent jurisdiction conferred on the District Court of the Virgin Islands by section 22(a) and (c) of this Act. (Emphasis supplied).

With this grant of authority, the *Virgin Islands legislature* vested in the Superior Court original jurisdiction over local matters. V.I. CODE ANN. Tit. 4, sec. 76. *See People v. Baxter*, (49 V.I. 384, 391 (V.I. 2008)). No extraterritorial jurisdiction by territorial courts established by local law can be con-

---

[21] Section 8 (a) states:
 (a) Scope of authority; limitation on enactments and taxation
 The legislative authority and power of the Virgin Islands shall extend to all rightful subjects of legislation not inconsistent with this chapter or the laws of the United States made applicable to the Virgin Islands, but no law shall be enacted which would impair rights existing or arising by virtue of any treaty or international agreement entered into by the United States, nor shall the lands or other property of nonresidents be taxed at a higher rate than the lands or other property of residents.
48 U.S.C.A. § 1574.

strued from the provisions of the ROA. Extraterritoriality is disfavored and is restricted as reflected in the following analogous pronouncement by the United States Supreme Court.

> It is a longstanding principle of American law "that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Foley Bros.*, 336 U.S., at 285, 69 S. Ct. at 577. This "canon of construction . . . is a valid approach whereby unexpressed congressional intent may be ascertained." *Ibid*. It serves to protect against unintended clashes between our laws and those of other nations which could result in international discord. See *McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 20-22, 83 S. Ct. 671, 9 L. Ed. 2d 547 (1963).

## B. WE LACK JURISDICTION to ENFORCE ARBITRATION in THE CAYMAN ISLANDS, BECAUSE THE VIRGIN ISLANDS CODE DOES NOT AUTHORIZE US to EXERCISE OUR POWERS OUTSIDE THE VIRGIN ISLANDS

I cannot discern any basis for the Superior Court to exercise jurisdiction beyond the territorial boundaries of the United States Virgin Islands. Title 1, section 2 of the Virgin Islands Code which is titled "Territorial Scope of Code," is unambiguous and states in its entirety that "This Code applies throughout the territory of the Virgin Islands, except as otherwise expressly provided." This language is the sentiment of the People of the Virgin Islands, expressed through their local representatives and the Legislature of the Virgin Islands ("Legislature"). The basis for the Superior Court's jurisdiction is Title 4, section 76 of the Virgin Islands Code. The basis for our jurisdiction is, as we have reiterated in our prior opinions, Title 4, section 32(a) of the same code. Undeniably, the jurisdictions of both territorial courts apply only "throughout the territory of the Virgin Islands." Accordingly, I am unaware of any Virgin Islands statute expressly or impliedly granting extraterritorial jurisdiction to the Superior Court.[22] Title 1, section 41 of the Virgin Islands Code defines the territory as follows: " 'Virgin Islands' in a geographical sense embraces

---

[22] I must quickly distinguish this from the Virgin Islands long arm statute, the goal of which is to ensure personal jurisdiction for Virgin Islands courts within the Virgin Islands, and not to expand jurisdiction to a foreign territory. *See* 5 V.I.C. ANN. § 4903.

the same territorial domain, islands, cays and waters that are designated as such in section 2(a) of the ROA of the Virgin Islands, approved July 22, 1954." In turn, section 2(a) of the Revised Organic Act also defines the Virgin Islands in geographical terms and with similar specificity:

> The provisions of this chapter, and the name "Virgin Islands" as used in this chapter, shall apply to and include the territorial domain, islands, cays, and waters acquired by the United States through cession of the Danish West Indian Islands by the convention between the United States of America and His Majesty the King of Denmark entered into August 4, 1916, and ratified by the Senate on September 7, 1916 (39 Stat. 1706). The Virgin Islands as above described are declared an unincorporated territory of the United States of America.

48 U.S.C. § 1541. Obviously, the territory of Cayman Islands is nowhere "throughout" the United States Virgin Islands. In addition, our Legislature has not yet enacted any express provision of the Virgin Islands Code authorizing any local court to order arbitration in the territory of the Cayman Islands. Therefore, I conclude that because "This Code applies throughout the territory of the Virgin Islands, except as otherwise expressly provided," Title 4, sections 32 and 76 of the code apply *only throughout the Virgin Islands and do not reach the Cayman Islands* where the parties' arbitration contract must be enforced.

Without an excursion into a foreign affairs discourse, it is noteworthy that some jurisdictions have enacted express provisions for international arbitration within their respective jurisdictions.[23] Therefore, if our Legislature is authorized to enact an international arbitration statute in the Virgin Islands, and wanted to enact one, it certainly knows how to do it.

---

[23] *See, e.g.,* Cal. Civ. Proc. Code §§ 1297.11-.432 (Deering 2007); Conn. Gen. Stat. §§ 50a-100 to -136 (2003); 710 Ill. Comp. Stat. §§ 30/1-1 to /99-99 (2003); N.C. Gen. Stat. §§ 1-567.30 to .68 (2005); Ohio Rev. Code Ann. §§ 2712.01-.91 (LexisNexis 2000); Or. Rev. Stat. §§ 36.450-.558 (2003); Tex. Civ. Prac. & Rem. Code Ann. §§ 172.001-.310 (Vernon 2005). Colo. Rev. Stat. §§ 13-22-501 to -507 (2006); Ga. Code Ann. §§ 9-9-1 to -43 (1982); Md. Code Ann., Cts. & Jud. Proc. §§ 3-2B-01 to -09 (LexisNexis 2006); Fla. Stat. §§ 684.01-.35 (2006); Haw. Rev. Stat. §§ 658-D-1 to -9 (1993). The territory of Guam, offers in a provision, in my view that is consistent with the Convention and Chapter 2 that "[t]his section only applies where the place of the arbitration is Guam and neither the Federal Arbitration Act nor the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards apply." Gu. St. T. 7 § 42A701.

In reviewing the *travaux préparatoires* to the Convention, the text of the Convention, and Chapter 2, I find that the United States has been presented with, and has declined, the opportunity to accord its territories the right to enact the Convention through their local institutions. During the conference prior to the adoption of the Convention, the contracting parties debated extensively whether each territory of the contracting party, such as the Virgin Islands, should be allowed to enact the Convention on its own through its local legislature. As a result of the debates, Article X of the Convention was enacted. The purpose of Article X is to provide a procedure for contracting parties to choose whether to allow territories to enact the Convention on their own or for the contracting party to enact it generally throughout its territories. The United States chose the latter when it enacted Chapter 2. Because these enactments are unambiguous, I am perplexed as to the basis of the Superior Court's jurisdiction to order arbitration in this case in the Cayman Islands.

## C. WE LACK JURISDICTION BECAUSE NEITHER THE CONVENTION nor ANY PREPARATORY CONFERENCE LEADING to ITS ADOPTION GRANTS JURISDICTION to a TERRITORY WITHOUT THE EXPRESS APPROVAL of a CONTRACTING PARTY WHICH is LACKING in OUR CASE

The United States committed to implement the Convention in its territories through federal courts. Incontestably, Chapter 2 applies to the Virgin Islands. The application of the Convention to contracting parties' territories such as the United States Virgin Islands was debated extensively during the meetings that culminated in the adoption of Chapter 2. *See, e.g.*, U.N. Econ. & Soc. Council [ESOSOC], United Nations Conference on International Commercial Arbitration, *Summary Record of the Twentieth Meeting held at Headquarters, New York, on Thursday, 5 June 1958, at 10. 40 a.m.*, at 5-9, U.N. Doc. E/Conf. 26/SR.20 (Sept. 12, 1958) (President: [C.W.] Shurmann, Executive Secretary: [Oscar] Schachter). (reporting debates, vote and adoption of the current language of Article X that extends the Convention to the territories of contracting parties). Article X requires each contracting party to the Convention to announce whether the Convention will apply in its territories, and the United States of America complied. In the words of the Convention:

1. Any state may, at the time of signature, ratification or accession, declare that this Convention shall extend to all or any of the territories for the international relations of which it is responsible. Such a declaration shall take effect when the Convention enters into force for the State concerned.

2. At any time thereafter, any such extension shall be made by notification addressed to the Secretary General of the United Nations and shall take effect as from the ninetieth day after the day of receipt by the Secretary General of the United Nations of this notification or as from the date of entry into force of the Convention for the state concerned.

 . . .

In compliance with the United States' obligations under Article X, and after Chapter 2 was enacted into law, the President of the United States proclaimed that he notified the Secretary General of the United Nations that "[i]n accordance with Paragraph 2 of Article X and pursuant to a notification by the Government of the United States of America . . . the application of the aforesaid Convention will extend . . . all the territories for the international relations of which the United States of America is responsible."[24] It is irrefutable that the provisions of Chapter 2 were expressly directed to the Virgin Islands and other United States territories. However, the benefits resulting from the Convention are to be secured through federal courts. *See* 9 U.S.C. 201 & 203. To conclude, the United States had an option to allow its territories to enforce the Convention through their respective local judicial institutions and chose not to so enforce the Convention.

---

[24] Richard Nixon, President of the United States, BY THE PRESIDENT OF THE UNITED STATES OF AMERICA A PROCLAMATION, Sept. 1, 1970, BY THE PRESIDENT OF THE UNITED STATES OF AMERICA, Convention done at New York June 10, 1958; 1970 WL 104417, T.I.A.S. No. 6997 December 29, 1970 *reprinted* in Gerald Aksen, *American Arbitration Accession Arrives in the Age of Aquarius: United States Implements United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, 3 Sw. U. L. Rev. 37 (1971) (Appx. D. Part I). In the proclamation, the President repeated that the provisions of the convention "shall be observed and fulfilled, as to the United States of America on and after December 29, 1970 and as to the territories for the international relations of which the United States of America is responsible on and after February 1, 1971 . . . ." *Id.* at 38.

Congress' decision to enforce Chapter 2 through federal courts was also compelled by another provision of the Convention, specifically Article XI, which governs how a federal government may implement the Convention. It provides in relevant part:

### Article XI

In the case of a federal or non-unitary State, the following provisions will apply:

 (a) With respect to those articles of this Convention that come within the legislative jurisdiction of the federal authority, the obligation of the federal government shall to this extent be the same as those of Contracting States which are not federal states.

 (b) With respect to those articles of this Convention that come within the legislative jurisdiction of constituent states or provinces which are not, under the constitutional system of the federation, bound to take legislative action, the federal government shall bring such articles with a favorable recommendation to the notice of the appropriate authorities of constituent states or provinces at the earliest possible moment.

As a federal government, Article XI (a) applied to the United States. In compliance therewith, the United States enacted Chapter 2 by promulgating section 201 in a section titled "enforcement of the convention" and section 203, titled "jurisdiction . . . . ," and both sections 201 and 203 are applicable to federal courts in the United States and its territories.[25] In his September 1, 1970 proclamation, the President of the United States expressly made commitments pursuant to Article X which

---

[25] It was suggested by commentators, even before Chapter 2's adoption by Congress that the best route for the enforcement of the convention is by federal courts. *See, e.g.*, Leonard V. Quigley, *Accession by the United States to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, 70 YALE L.J. 1049, 1081 (1961) ("The United States should explicitly limit accession to the federal courts, in the sense that those courts will be the only tribunals in which the obligations of the United States under the Convention may be enforced."). Subsequent to the enactment of Chapter 2 into law, another commentator observed: "The necessary proceeding to secure the terms of the convention shall be in the 'United States courts," thus vesting jurisdiction in federal courts to hear actions or proceedings in connection with foreign agreements or awards." Gerald Aksen, *American Arbitration Accession Arrives in the Age of Aquarius: United States Implements United Na-*

extends the Convention to its territories. It made no mention of Article X (b), which extends the Convention to constituent states. On the whole, the legislative history of Chapter 2 is silent on its applicability to states, even though the United States of America, as a contracting party, undertook to bring the convention to the notice of its constituent states. However, as to the Convention, the United States level of commitment to its territories is explicitly elucidated in the following.

## D. WE LACK JURISDICTION BECAUSE CONGRESS EXCLUDED THE SUPERIOR COURT in ITS LIST of COURTS WITH JURISDICTION OVER CHAPTER TWO CASES

Only courts created by the Congress of the United States and located in a United States territory are authorized to exercise jurisdiction over an international arbitration agreement. Section 201, Title 9 titled "enforcement of convention" is unequivocal, epigrammatic and unambiguous: *"the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter."* Crucially, in section 203, Chapter 2 reiterates that jurisdiction is vested in courts such as the district court of the Virgin Islands. Section 203 enumerates with clarity, conciseness and specificity the courts which shall have jurisdiction to enforce the Convention in the territories of the United States.

Title 9, section 203 of the United States Code provides that:

> An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (*including the courts enumerated in Section 460 of Title 28*) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

9 U.S.C.A. § 203 (emphasis added).

Critically, the courts enumerated under section 460 of Title 28 of the United States Code **are those created by the Congress of the United States. Section 460 provides:**

---

*tions Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, 3 Sw. U. L. Rev. 16 (1971).

Sections 452 through 459 and section 462 of this chapter shall also apply to the United States Court of Federal Claims, to each court created by Act of Congress in a territory which is invested with any jurisdiction of a district court of the United States, and to the judges thereof.[26]

28 U.S.C. § 460.

I conclude that considering the above and given a forthright reading of Chapter 2 of Title 9, the only plausible conclusion is that only United States courts have jurisdiction to hear Convention cases. It is axiomatic that on a list, when an item is specifically included, such inclusion could be construed to mean that similar items not mentioned are excluded from the class. In this case, although the Superior Court and the District Court of the Virgin Islands may share some aspects of concurrent jurisdiction in Virgin Islands causes, the list of courts in the territories with jurisdiction over actions or proceedings falling under the Convention only include those courts that are created by Congress. Therefore, the Superior Court is without jurisdiction. Furthermore, if Congress had intended to include territorial "local courts" under Chapter 2 of Title 9 of the United States Code, it demonstrably knows how to do it. Consequently, it is needless to resort to statutory construction when Congress' statutory language is inordinately explicit.

The language of 28 U.S.C. § 460 vesting jurisdiction in the District Court of the Virgin Islands is exceedingly clear. Similarly, Congressional language vesting jurisdiction of Chapter 2 cases in the District Court of the Virgin Islands is unmistakable, concise, and unequivocal. It is well settled that when the statutory language is plain and unambiguous, no further interpretation is required. See Zuni Public Schools Dist. No. 89 v. Dep't of Educ., 550 U.S. 81, 127 S. Ct. 1534, 1543, 167 L. Ed. 2d 449 (2007). We must "follow the plain meaning of the statutory test." Massachusetts v. EPA, 549 U.S. 497, 127 S. Ct. 1438, 1459-63, 167 L. Ed. 2d 248 (2007); Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 126 S. Ct. 2455, 2459, 165 L. Ed. 2d 526 (2006). ("[I]f the intent of [the legislature] is clear and unambiguously expressed by the

---

[26] The sections 452, through 459, and 462 respectively relate to federal court's powers to remain open perpetually, to take oaths, and *federal* judges' accommodation and other housekeeping.

statutory language at issue that would be the end of our analysis."). "It is well established that when a statute's language is plain, the sole function of the courts at least where the disposition required by the text is not absurd is to enforce it according to its terms." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004).

Section 205 of Title 9, which incorporates section 460 of Title 28, makes expressly unequivocal that because we are a United States territory, *and our local courts are created by the Virgin Islands legislature and not the United States Congress*, then neither the Superior Court nor the Supreme Court of the Virgin Islands is vested with jurisdiction over a matter arising out of Chapter 2.

Next, since our grundnorm does not grant jurisdiction and the Legislature has made no law, I will examine whether the Restatement (Third) of the Foreign Relations Law of the United States authorizes the required jurisdiction. It will be obvious that it does not.

## E. THE RESTATEMENT of FOREIGN RELATIONS is WHOLLY INAPPLICABLE and CANNOT GRANT JURISDICTION to a VIRGIN ISLANDS LOCAL COURT to ENFORCE an AGREEMENT in THE CAYMAN ISLANDS, a TERRITORY of THE UNITED KINGDOM

I have exhaustively reviewed the pertinent provisions of the Restatement (Third) of Foreign Relations Law. I cannot find any provision in the Restatement which provides a territorial court such as ours with jurisdiction to enforce an arbitration agreement in a foreign country. I am mindful of both the pertinent provisions of the Revised Organic Act and of the presumption against extraterritorial applicability of statutes. In this case, neither Congress nor the local Legislature has authorized this extraterritorial exercise of jurisdiction by either the Superior Court or this Court. I examined Title 1, section 4 of the Virgin Island Code, to determine the application of the Restatement to this case on the issue of jurisdiction. I conclude that the Restatement does not provide any authority conferring upon the Superior Court any extraterritorial powers or jurisdiction over this case.

### 1. Title 1, Section 4 of the Virgin Islands Code does not Authorize the Application of the Restatement.

Before applying the Restatement to this case, we first review whether the Virgin Island Code has authorized such an application. I will conclude that it does not. Title 1, section 4 of the Virgin Islands Code provides that:

§ 4 Application of common law; restatements

The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

It is obvious from Title 1, section 4's language that the Restatement is not applicable to this case because (under Title 1, section 4, of the Virgin Islands Code), "*[t]he rules of the common law*, as expressed in the restatements of the law approved by the American Law Institute. . . . shall be the rules of decision in the court of the Virgin Islands *in cases to which they apply, in the absence of local laws to the contrary.*" The Convention is not a rule of the common law; rather, it is an international treaty to which the United States is a signatory. Additionally, the Convention is a federal statute enacted in derogation of the common law. *See, e.g., Suter v. Munich Reinsurance Co.,* 223 F.3d 150, 159 (3d Cir. 1983) ("[T]he pro-arbitration policies reflected in the Convention Act represented a significant departure from the common law . . . ."). Recently, we *emphasized that* Title 1, section 4, of the Virgin Islands Code is triggered only in cases involving the common law. *Brown v. People,* 49 V.I. 378 n. 22 (V.I. 2008); S. Ct. Crim. No. 2008-022, Opinion of the Ct. at 21 n. 22 (V.I. Aug. 29, 2008) (" 'the *rules of the common law*. . . .' 1 V.I.C. § 4 (emphasis added)."), *available at* http://www.visupremecourt.org/wfdata/frame923-1069/File22.pdf. We were faithful to the United States Code and the Virgin Islands Code in *Brown,* and we were correct.

There are other reasons why the Restatement does not apply in this case. Section 487 of the Restatement does not address extraterritorial jurisdiction. The Restatement's "a court" does not apply to every court in the territory of a contracting party to the Convention, and using the Restatement to judicially legislate extraterritorial jurisdiction obviously violates Title 1, section 2, of the Virgin Islands Code's instruction that "This Code applies throughout the territory of the Virgin Islands, except as otherwise expressly provided." Next, I will examine section 487's lack of extraterritorial possibilities.

## 2. The Provisions of the Restatement do Not Address Extraterritorial Jurisdiction

At the onset, I must acknowledge that no section of the Restatement can be read in isolation. Each rule of law in blackletter type in numbered sections of the Restatement, such as section 487, is amplified by source notes, introductory materials or comments.[27] They should be read together.

Section 487 *in its entirety* does not address and is devoid of extraterritoriality. Furthermore, section 487 *does not* address a court's power to refer a matter to arbitration in a foreign jurisdiction such as the Cayman Islands, which is exactly what this case entails. Therefore, even if the Convention was part of the common law, the Restatement would still *not* apply in this case, as is self-evident in Title 1, section 4's the "cases to which they apply" language. Section 487 of the Restatement is the operative section of the Restatement upon which extraterritorial jurisdiction is proposed by the majority. It provides:

> § 487. Recognition And Enforcement Of Foreign Arbitral Agreements And Awards
>
> Under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, and subject only to the defenses set forth in § 488,
>
> (1) a court in a state party to the Convention must recognize and enforce an arbitral award, rendered in a state party to the Convention pursuant to a valid written agreement to arbitrate, at least if the legal relationship that gave rise to the controversy was commercial in character;
>
> (2) a court in a state party to the Convention must, at the request of any party to an action, stay or dismiss the action pending arbitration if an agreement to arbitrate falling under the Convention is in effect and covers the controversy on which the action is based.

---

[27] Restatement (Third) of Foreign Relations Law of the U.S., *The American Law Institute and Restatement Third, Restatement of the Foreign Relations Law of the United States*, Restatement (Third) of Foreign Relations Law of the U.S., at XI (1987) ("the Introductory Notes, the rules of law in blackletter type, and the Comments express the views of the institute.") "The reporters' Notes, on the other hand, reflect the views of the Reporters and describe the legal sources that they have considered relevant."

RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES § 487 (1987).

Section 487 is immediately followed by a declaration that its sole source is entirely international law as adopted by Chapter 2 of Title 9 of the United States Code:

> Source Note:
> Convention on the Recognition and Enforcement of Foreign Arbitral Awards, New York, 1958; entered into force, 1959, entered into force for the United States, 1970, 21 U.S.T. 2517, T.I.A.S. 6997; 330 U.N.T.S. 3; United States Arbitration Act, Title II 9 U.S.C. §§ 201-208.

*Id.*, source note. This means that the pertinent part of the Restatement (Third) of Foreign Relations is based on the Convention and the Act of Congress implementing it. Accordingly, there is no common law and no practice among the constituent states inconsistent with Chapter 2 of Title 9 upon which we may rely.

Importantly, section 487's comment e clarifies that only *a court with jurisdiction* may enforce an arbitration agreement. The comment, titled "enforcement of agreement to arbitrate" provides:

> *e. Enforcement of agreement to arbitrate.* An agreement to arbitrate is enforceable in two ways: *a court having jurisdiction of an action* concerning a controversy with respect to which an agreement to arbitrate is in effect (i) *must*, at the request of any party, stay or dismiss the action, pending arbitration; and (ii) may direct the parties to proceed to arbitration in accordance with the agreement. Under the United States Arbitration Act and most modern State arbitration statutes, both means of enforcement of agreements to arbitrate are available. Under the federal act, the court is expressly authorized to direct that arbitration be held in accordance with the agreement, "at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206.

Comment e to § 487 (emphasis added). Significantly, Title 9, section 206 of the United States Code applies to a court with jurisdiction. Comment a to section 487 also makes abundantly clear the federal nature of enforcement of the Convention in the United States and makes no mention of territories:

**Comment:**

*a. The New York Convention and United States law.* The Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the New York Convention) is a multilateral treaty binding not only on all states parties (see Reporters' Note 2) but, with exceptions not relevant to the United States, on their political subdivisions as well. As a result of the Convention and the implementing legislation, 9 U.S.C. §§ 201-208, enforcement of foreign arbitral awards is a question arising under the laws and treaties of the United States; *the federal courts, therefore, have jurisdiction to enforce arbitral awards falling under the Convention, regardless of the citizenship of the parties or the amount in controversy.* (emphasis added).

RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE U.S. § 487 Cmt. a.[28] Since the Restatement does not confer jurisdiction, but restates the power of a court already with jurisdiction to review a case under Chapter 2, section 487 neither serve as a basis for jurisdiction nor confer jurisdiction over this case upon the Superior Court.

### 3. The Language of The Restatement Pertains Only to Courts With Jurisdiction Not to Every Court in the United States or its Territories

The comments to section 487 painstakingly reflect that in the United States, there is a federal law restricting the operation of the Convention to courts with jurisdiction. In proper context, therefore, it would be absurd to hinge the Superior Court's jurisdiction over this case upon the article, "a", in its language "a court in a state party to the convention. . . ." § 487(1).

---

[28] The Restatement (Third) of Foreign Relations makes clear, in its scope section, that it deals with the *foreign relations laws of the United States as the United States deals with other countries. See* Restatement of Foreign Relations Law section 1. *Compare* Restatement of Foreign Relations Law, vol. 1 (Introduction, note. Page 5) ("In this Restatement, the word 'states' is used in its international usage, referring to the nation-states that constitute the international political community. The constituent units of the United States are designated "States." (with initial capital).") *with id.* Section 487(1) or (2).

### 4. The Restatement is Inapplicable for Extending the Jurisdiction of the Superior Court Beyond the Virgin Islands Because a Local Law Exists which Bars Extraterritoriality

Title 1, section 4 of the Virgin Islands code does not authorize the use of the Restatements where there is a Virgins Islands law which precludes the application of the Restatement in a particular instance. Title 1, section 2, of the Virgin Islands Code unambiguously states in its entirety that "*this code applies throughout the territory of the Virgin Islands, except as otherwise expressly provided.*" Therefore, any effort or attempt to apply the Restatement to grant extraterritorial jurisdiction to the Superior Court to enforce an arbitration contract in the Cayman Islands, will be in sharp conflict with and contrary to Title 1, section 2.

### F. THE PRESUMPTION of CONCURRENT JURISDICITON DOES NOT APPLY BECAUSE WITHIN THE REVISED ORGANIC ACT CONGRESS OUSTED JURISDICTION FROM LOCAL COURTS in THIS CASE

In Section 21(b) of the ROA Congress *expressly limits local courts' jurisdiction to "causes in the Virgin Islands."*[29] In section 22(b) Congress left for the District Court of the Virgin Islands jurisdiction over all causes in the Virgin Islands "the jurisdiction over which is not then vested by local law in the court of the Virgin Islands. . ." The legislature has not enacted a local international arbitration statute; therefore, the Legislature has not vested jurisdiction over such subject matter in any territorial court of the Virgin Islands. Consequently, there is no concurrent jurisdiction in this matter between the District Court and the Superior Court.

Additionally, unlike states, the legislative history of the Convention established that Congress *clearly intended to keep Convention matters within federal courts in the case of territories.* The explicit provisions of Title 9, section 203 and Title 28, section 460, consigning jurisdiction in the District Court of the Virgin Islands, demonstrates that Congress knows how to implement an international agreement in the United States Virgin

---

[29] Because Congress provided concurrent jurisdiction in our grundnorm, it is obvious that this presumption of concurrent jurisdiction is not available in the United States Virgin Islands beyond Virgin Islands causes. *Nevada v. Hicks*, 533 U.S. 353, 367, 121 S. Ct. 2304, 150 L. Ed. 2d 398 (1994).

Islands. Furthermore, the issue of whether *territories* could enact the Convention based on their local needs and by their local institutions was debated at the conference establishing the Convention. At the end, as demonstrated by Article X and XI of the Convention which are part of Chapter 2, each country with territories was given the option to choose how to implement the Convention in their respective territories. The United States chose to implement the Convention federally. The United Kingdom, for example, chose to allow its territories to decide the implementation issue. It is unmistakable that Congress preferred a federal forum because it enacted Chapter 2 which incorporates Articles X and XI of the Convention. The incompatibility between a local court's jurisdiction and that of a federal court is clear and form the next section of this opinion. Accordingly, there is no issue of concurrent jurisdiction in this case.

Additionally, I cannot over emphasize that when Congress wanted the Convention to apply to territories, it so stated.

## G. WE LACK JURISDICTION BECAUSE FEDERAL COURTS ARE PREFERRED IN CHAPTER 2 CASES FOR POLICY REASONS

There are at least seven reasons why federal courts are the appropriate venue for cases arising under the Convention Act. First, the language of Chapter 2 is precise that original jurisdiction is vested in federal courts; section 203 ("The district courts of the United States (including the courts enumerated in section 460 of Title 28) shall have original jurisdiction over such an action or proceeding. . . ."); section 206 ("A court having jurisdiction under this chapter may direct . . . arbitration . . . ."). Under Title 28, the courts having jurisdiction are federal courts. The *subject matter of agreements coming within Chapter 2 is outlined in section 202.* Initially, it may appear that section 205 grants jurisdiction to state and local courts. However, upon closer scrutiny, it does not. Section 205 merely permits defendants to remove a plaintiff's state-filed action to a federal court when the subject matter of the action relates to an arbitration agreement that "fall[s] under" Chapter 2's section 202 and section 205; *see Beiser v. Weyler*, 284 F.3d 665, 666 (5th Cir. 2002) ("whenever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement 'relates to' the *plaintiff's* suit."). Surely, the scope of "relates to" is not endless. *See Certain Underwriters at Lloyd's, London and Other Insurers Subscribing*

*to Reinsurance Agreements F96/2922/00 and No. F97/2992/00 v. Warrantech Corp.*, 461 F.3d 568, 576 (5th Cir. 2006) ("We do not revisit *Beiser's* construction of 'relates to' here, but we do note, as did the district court here, that subsequent . . . cases [upon which *Beiser* relied upon] have recognized some limits on the reach of 'relates to.' ") However, the weight of authority is that the "relates to" language is expansive. *See* 223 F.3d at 158. In cases where courts have examined whether section 205 may be waived, courts have refused to find a waiver of Convention rights absent a "clear and unequivocal" expression of intent to waive those rights. *See* 944 F.2d 1199.

Second, the Convention Act implicates foreign relations and treaty relations, a sphere of national operation largely consigned to the federal government. *See Suter*, 223 F.3d at 155. The requirements of international comity may dictate that a nation acceding to the Convention may utilize only federal courts in such matters, although it would not do so in regular national affairs. The United States Supreme Court has outlined these foreign policy concerns underlying the Convention:

> concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement [to arbitrate under the Convention] even assuming that a contrary result would be forthcoming in a domestic context.

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985). For United States citizens to enjoy predictable enforcement of arbitral contracts by foreign governments, Congress guaranteed reciprocal enforcement of the arbitral agreements under the Convention in the United States courts. *See* Convention Art. XIV ("A Contracting State shall not be entitled to avail itself of the present convention against other Contracting States except to the extent that it is itself bound to apply the Convention."); *McDermott Intern., Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1207-1208 (5th Cir. 1991). Therefore, each court's decision could jeopardize the arbitration rights of citizens who are not parties to the case. "If state courts refuse to promptly enforce arbitration agreements in Convention cases, other signatory nations could cite the Convention's reciprocity clause to justify departing from the Conven-

tion in cases involving citizens of states with recalcitrant courts." 944 F.2d at 1211.

Third, the legislative history supports a conclusion that federal courts are the preferred forum. The Senate Report does not make mention of exclusivity to the federal government. It is undisputed that the United States shares concurrent jurisdiction with states. *Id.* at 102 n. 12. However, the method for extending the Convention to a state or territory is by legislative action. *See* U.N. Convention for the Recognition and Enforcement of Foreign Arbitral Awards. Art. XI ("with respect to those articles of this Convention that come within the legislative jurisdiction of constituent states. . . ."). Moreover, courts have analogized Chapter 2 to the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1330. In an attempt to build a unitary structure for all FSIA cases, "Congress deliberately sought to channel cases against foreign sovereigns away from the state courts and into federal courts." *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 497, 103 S. Ct. 1962, 76 L. Ed. 2d 81 (1983). "Similarities between the removal statutes in the FSIA and the Convention Act indicate that Congress also sought unity by channeling Convention Act cases into federal courts." 944 F.2d 1212. *See* 223 F.3d 158; *compare* 9 U.S.C. § 205 *with* 28 U.S.C. § 1441(d). In both statutes, removal is based on the foreign domicile of the parties and not the questions raised by the case or amount in controversy. Both statutes also contain expansive removal provisions.

Fourth, the national policy of arbitration is ordinarily better achieved through federal courts to prevent state courts' historical hostility towards arbitration. In *Suter*, the court declared that achieving Chapter 2's objectives requires a federal court forum. *Id.* at n.3. ("Our holding that the policy and structure of the Convention Act establish the federal courts as a preferred forum for resolving disputes under the Convention Act is further supported by the fact that arbitration in general is a favored forum."). Additionally, allowing state courts to manage the delicate issues of diplomatic reciprocity is unwise, because diplomacy and treaty making are the exclusive province of the Federal Government, and the federal courts have jurisdiction over cases involving treaties. U.S. CONST. art. II, sec. 2, cl. 2 and art. III, sec. 2.

Fifth, because the need to enforce international commercial agreements is even more critical, a different means of enforcement other than in state courts is required. Hence, while state courts may enforce domestic

arbitration agreements pursuant to Chapter 1 of the FAA, the greater urgency inherent in international contracts justifies recourse to a federal forum exclusively. "Courts must sometimes enforce [international arbitration agreements] even where 'a contrary result would be forthcoming in the domestic context.' " *Suter*, 223 F.3d at 158 n. 3 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985). The reason for this is that:

> A parochial refusal by the courts of one country to enforce an international arbitration agreement would not only frustrate these purposes, but would invite unseemly and mutually destructive jockeying by the parties to secure tactical litigation advantages . . . . [T]he dicey atmosphere of such a legal no-man's-land would surely damage the fabric of international commerce and trade, and imperil the willingness and ability of businessmen to enter into international commercial agreements.

*Scherk*, 417 U.S. at 516-17.

Sixth, the goal of a uniform standard for the Convention's enforcement can only be enhanced by enforcement in federal courts. The Supreme Court declared that:

> The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.

*Scherk*, 417 U.S. at 520 n. 15, 94 S. Ct. 2449. "Moreover, given that the pro-arbitration policies reflected in the Convention Act represented a significant departure from the common law, the concern about uniformity is particularly compelling." *Suter*, 223 F.3d at 159. It has been argued that uniformity is engendered as long as local or state courts apply Chapter 2. However, such argument has failed. "Disunity is directly proportional to the number of authorities speaking on any subject." 944 F.2d at 1212. "Institutional review procedure for state-court judgments also fosters disunity." *Id.*

Seventh, in the peculiar instance of Virgin Islands where no local statute addresses the subject, the categorical language of Chapter 2 consigns jurisdiction in courts created by Congress; therefore, enforcement must be in the courts created by Congress. For the Superior Court to apply Chapter 2, it would have to ignore the law which requires federal courts to perform the functions they must undertake in order to compel arbitration. Accordingly, enforcement of a matter arising under Chapter 2 in the Virgin Islands must be resolved in our congressionally created court which is the District Court of the Virgin Islands.

## H. COURTS LOCATE THE JURISDICTION of CHAPTER 2 DISPUTES in FEDERAL COURTS

### 1. Courts have held that Chapter 2's Jurisdiction is in Federal Courts

There is substantial persuasive authority in caselaw that Congress's purpose in adopting and enacting the Convention was to provide for a uniform standard operating through federal courts. *See, e.g., McDermott Intern., Inc. v. Lloyds Underwriters of London* 944 F.2d 1199, 1212 (5th Cir. 1991) (state courts may not enforce the Chapter 2 cases).

For example, the United States Court of Appeals for the Third Circuit observed that federal law governed Chapter 2 cases in the Virgin Islands:

> The forum law implicitly referenced by Article II section 3 is the law of the United States, not the local law of the Virgin Islands or of a state. That law favors enforcement of arbitration clauses. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 94 S. Ct. 2449, 41 L. Ed. 2d 270 (1974); *Becker Autoradio U.S.A. Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39 (3d Cir. 1978). Indeed, "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States." 9 U.S.C. § 203. Such an action would be removable from a state court. 9 U.S.C. § 205. *The removal section has no application, of course, to the District Court of the Virgin Islands, which exercises the jurisdiction of the United States District Courts in all cases arising under the treaties and laws of the United States.* 48 U.S.C. § 1612 (1976 & Supp. V 1981).

*Rhone Mediterranee Compagnia Francese Di Assicurazioni E Riassicurazoni v. Lauro*, 712 F.2d at 54. The basic holding of the Third Cir-

cuit, that the forum of a Chapter 2 action is a federal court, has not changed. *See Suter v. Munich Reinsurance Co.*, 223 F.3d 150 (3d Cir. 2000) ("the Convention Act and the policy choices that support it establish a strong and clear preference for a federal forum . . . ."). In another Chapter 2 case, the Third Circuit reiterated Chapter 2's preferred enforcement through federal courts:

> The United States Courts certainly recognize international arbitration agreements. Our nation, like the United Kingdom, Germany and scores of other countries, has adopted the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("The New York Convention"), June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997, *reprinted in* 9 U.S.C. § 201 note. *The Federal Arbitration Act implements the United States' accession to the Convention, see 9 U.S.C. §§ 201-08, and provides that it "shall be enforced in United States courts . . . ." Id. § 201*

*General Elec. Co. v. Deutz AG*, 270 F.3d 144, 154 (3d Cir. 2001) (emphases supplied). *In Societe Generale de Surveillance, S.A. v. Raytheon European Mgmt. and Sys. Co.*, 643 F.2d 863, 867 n. 4 (Ist Cir. 1981) the Court stated:

> Title 9 U.S.C. § 201 provides unequivocally that the Convention "shall be enforced in United States courts in accordance with this chapter." The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.

In *McDermott*, the Fifth Circuit observed that "section 206, like the FAA's section 4, arguably confers no authority on state courts to compel arbitration." 944 F.2d 1211 n. 9.

## 2. The Parties' Reliance on Chapter 1 of the FAA is Misplaced

The parties rely on cases applying Chapter 1 of the FAA to the Virgin Islands for their arguments that we have jurisdiction over this case, which is a Chapter 2 case. *See, e.g., Virgin Islands v. United Industrial Workers, N.A.*, 40 V.I. 489, 169 F.3d 172, 176 (3d Cir. 1999). Essentially, the parties

part ways where Martinez believes that the trial court should have stayed the action and referred the case to arbitration. For this proposition, Martinez cites *Lloyd v. Hovensa, LLC*, 369 F.3d 263 (3d Cir. 2004), which holds that a court must stay, not dismiss, a properly filed request to refer a matter to arbitration. On the other hand, Columbian Emeralds argues that the trial court properly dismissed Martinez's action because Martinez filed his request too late or approximately two weeks after the case was dismissed.

I will not reach the merits of their contentions because they are profoundly mistaken. Their mistake emanates from one source: the vagueness, if not confusion, in the language of Chapter 1's sections 3 and 4 relative to the United States Virgin Islands, which provisions do not apply to Chapter 2. Those sections provide:

> **§ 3. Stay of proceedings where issue therein referable to arbitration** If any suit or proceeding be brought *in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court* in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

The next section, Section 4, purports to define the court having jurisdiction in chapter 1 cases.

> **§ 4. Failure to arbitrate under agreement; petition to United States court having jurisdiction for order to compel arbitration; notice and service thereof; hearing and determination**
> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition *any United States district court which, save for such agreement, would have jurisdiction under Title 28*, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . .

9 U.S.C. § 4.

To clearly understand the following, one must be extremely mindful of the compelling and significant differences between Chapter 2 arbitration, which is not applicable to the Superior Court, and Chapter 1 arbitration, which is applicable to the Superior Court. Likewise, one must be mindful that this case is a Chapter 2 case and not a Chapter 1 case. This discernable difference is the focus of this part of the opinion.

In contradistinction to the Convention and Chapter 2, Chapter 1 of the FAA contains no specific provision applying the Act to the Virgin Islands. Specifically, Chapter 1 lacks Chapter 2, section 201's clear statement of exclusive enforcement through federal courts. For example, Chapter 1 lacks Chapter 2, section 203's language, through title 28, section 460, extending jurisdiction *"to each court created by Act of Congress in a territory which is invested with any jurisdiction of a district court of the United States, and to the judges thereof."* Because of Chapter 1's vagueness, Articles 3 and 4 are veritable construction sites for cases extending their reach to the Virgin Islands.

By a literal interpretation of Articles 3 and 4 of Chapter 1, the language of these articles divests of jurisdiction all courts not specifically mentioned in sections 3 and 4. Literally applying Chapter 1, the United States Court of Appeals for the Fifth Circuit held that "the district court for the Canal Zone [a court like the District Court of the Virgin Islands] is not a constitutional court established by Chapter 5 of Title 28, U.S.C.;" therefore, that court could not enforce an arbitration agreement pursuant to Article 3 of the FAA. *Jos. L. Muscarelle, Inc. v. Am. Timber & Trading Co.*, 404 F.2d 467, 469 (5th Cir. 1968). On the other end of the legal spectrum, and applying a less literal interpretation, is the Third Circuit Court of Appeals. Hence, the court in *Econo-Car Intern., Inc. v. Antilles Car Rentals, Inc.*, 11 V.I. 258, 499 F.2d 1391, 1393 (3d Cir. 1974) refused to follow *Jos. L. Muscarelle, Inc.* But the Third Circuit court's rationale rested on the vagueness, if not confusion, in the sections' language, concluding that Congress did not consider the issue of the FAA's applicability to the territories. In the words of the court:

> None of the arguments of the parties concerning the precise meaning of the uncertain statutory language and the relative wisdom of arguably conflicting judicial precedents offers a persuasive rationale for disposing of this appeal. *The absence of legislative material relating to the applicability of the Act to the Virgin Islands suggests that Con-*

*gress did not consider the precise issue presented by this appeal. With the issue of the applicability of the Act to the district court for the Virgin Islands in this inconclusive posture, it would appear that we should reach a decision reflecting the strong federal policy, evidenced by the Act itself, favoring the enforcement of arbitration agreements.* No conflicting policy considerations of significance are apparent. Thus, we conclude that the Federal Arbitration Act extends to the district court for the Virgin Islands, thereby conferring upon it the power to direct arbitration in the present case.

499 F.2d 1393 (emphasis added).

Extending *Econo-Car's* rationale, but adding the common law as a source for the applicability of the FAA, the court in *Virgin Islands v. United Industrial Workers, N.A.*, 40 V.I. 489, 169 F.3d 172, 176 (3d Cir. 1999) ruled that

> As the District Court stated and as we agree, the [Superior] Court is a state court for purposes of the FAA. . . . Additionally . . . the provisions of the FAA apply within the [Superior] Court by virtue of the common law of the Virgin Islands . . . Because there is no Virgin Islands statute on point, the RESTATEMENT (SECOND) OF CONTRACTS § 345(f) provides a rule of law for the Virgin Islands.

The Third Circuit continues,

> Although the FAA applies by its terms to cases in federal courts, 9 U.S.C. §§ 3-4, in *Southland Corp. v. Keating*, 465 U.S. 1, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984), and *Allied-Bruce Terminix Companies v. Dobson*, 513 U.S. 265, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995), the Court reaffirmed that the FAA also applies in state courts to the extent that an arbitration provision affects interstate commerce.

Irrespective of what its opinion on sections 3's and 4's applicability to states may be, the United States Supreme Court has never ruled that Chapter 1 does not apply to the Virgin Islands:

> While we have held that the FAA's "substantive" provisions-§§ 1 and 2-are applicable in state as well as federal court, *see Southland Corp. v. Keating*, 465 U.S. 1, 12, 104 S. Ct. 852, 859, 79 L. Ed. 2d 1 (1984), we have never held that §§ 3 and 4, which by their terms appear to apply

only to proceedings in federal court, *see* 9 U.S.C. § 3 (referring to proceedings "brought in any of the courts of the United States"); § 4 (referring to "any United States district court"), are nonetheless applicable in state court. *See Southland Corp. v. Keating, supra,* at 16, n. 10, 104 S. Ct. at 861 n.10 (expressly reserving the question whether "§§ 3 and 4 of the Arbitration Act apply to proceedings in state courts"); *see also id.,* at 29, 104 S. Ct. at 867 (O'Connor, J., dissenting) (§§ 3 and 4 of the FAA apply only in federal court).

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University,* 489 U.S. 468, 477 n. 6, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989).

However, using Chapter 1 to confer jurisdiction on the Superior Court in Chapter 2 cases is not sustainable. Both Chapter 1 and Chapter 2 are applicable to separate, distinct and entirely different subjects on federal arbitration. Although the interpretation that Chapter 1's sections 3 and 4 apply to the Superior Court of the Virgin Islands has been repeated, and has in fact prevailed, the bases of this interpretation are the extraordinary national policy favoring arbitration and the absence of any legislative history suggesting that Congress desired a different result in the United States Virgin Islands. If there is any question that the FAA's Chapter 1 does not confer jurisdiction, the United States Supreme Court has declared:

> Congress enacted the FAA to replace judicial indisposition to arbitration with a "national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 443 (2006). As for jurisdiction over controversies touching arbitration, the Act does nothing, being "something of an anomaly in the field of federal-court jurisdiction" in bestowing no federal jurisdiction but rather requiring an independent jurisdictional basis. *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 25, n. 32 (1983); *see, e.g.,* 9 U.S.C. § 4 (providing for action by a federal district court "which, save for such [arbitration] agreement, would have jurisdiction under title 28"). But in cases falling within a court's jurisdiction, the Act makes contracts to arbitrate "valid, irrevocable, and enforceable," so long as their subject involves "commerce." § 2. And this is so whether an agreement has a broad reach or goes just to one dispute, and whether enforcement

be sought in state court or federal. *See ibid.; Southland Corp. v. Keating*, 465 U.S. 1, 15-16 (1984).

*Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 128 S. Ct..1396, 1402, 170 L. Ed. 2d 254 (2008).

If Congress left a loophole in Chapter 1 which allowed Chapter 1 to be extended to this territory without local legislation, Congress explicitly closed that loophole as to Chapter 2 when Chapter 2 was enacted. In contrast to FAA's sections 3 and 4, Congress specifically addressed United States territories such as the Virgin Islands when it enacted provisions to extend Chapter 2 to these territories. Because the language of Chapter 2 which vests jurisdiction in federal courts is clear, we must apply it. We note that Congress undertook an overhaul of the court structure of the Virgin Islands through the Revised Organic Act in 1984. It did not change the provisions of sections 201 and 203 or their level of applicability. Therefore, the parties' claims that the Superior Court may exercise jurisdiction in Chapter 2 cases, such as this case, lacks merit because in Chapter 2 cases, the statute conferring jurisdiction in courts established by Congress is clear and irrefutable.

In conclusion, while Chapter 1 of Title 9 has been used for jurisdictional purposes in the past, Chapter 1 does not control Chapter 2 disputes. Chapter 2 of Title 9 comes with its own jurisdictional provision based on international obligations. Pursuant to Chapter 2, section 208, any inconsistent provision with Chapter 2 in Article 1 of the FAA is inapplicable and inoperative.[30] Apart from Congress's clear divestiture of local courts' jurisdiction, it is axiomatic that when the Superior Court lacks subject matter jurisdiction, we also lack subject matter jurisdiction. Therefore, I can find no authority to enforce an agreement involving FAA's chapter 2, whereby the Superior Court of the Virgin Islands may enforce an arbitration agreement in the Cayman Islands.

## IX. THE SUPERIOR COURT LACKED JURISDICTION TO AWARD ATTORNEY'S FEES

To restate, a court without jurisdiction at the onset may not award attorney's fees. Therefore, the trial court's award of attorney's fees cannot

---

[30] "Chapter 1 applies to actions and proceedings brought under this chapter to the extent that chapter is not in conflict with this chapter or the Convention as ratified by the United States." 9 U.S.C. § 208.

stand. *See Skaff v. Meridien North America Beverly Hills, LLC*, 506 F.3d 832, 837 (9th Cir. 2007) ("A court that lacks jurisdiction at the outset of a case lacks the authority to award attorneys' fees."). *See also Randazzo v. United States*, 751 F.2d 145, 146 (3d Cir. 1984) ("this court lacks jurisdiction to entertain . . . attorney's fees appeal" where trial court, which was required under a tax statute to include attorney's fees in its determination of damages, lacked jurisdiction over a separate attorney's fees case.).

## X. CONCLUSION

I would **VACATE** the judgment of the Superior Court in its entirety and instruct that court to **DISMISS** this case for lack of jurisdiction.